# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1911.

---

WALTER S. FISHER *v.* J. T. WESTMORELAND.

[57 South. 563.]

1. PRINCIPAL AND AGENT. *Malicious prosecution.* *Liability for agent's acts.*

> The principal is liable for the acts of his agent in instituting a criminal prosecution maliciously and without probable cause, if the institution of such prosecution was expressly authorized or subsequently ratified by the principal, or was within the scope of the agent's employment.

2. SAME.

> Authority from the principal to an agent to sell property, does not confer authority to prosecute for theft of such property. An expressed authority to prosecute one person, excludes any authority to prosecute another.

3. SAME.

> As a caretaker of the property of a principal an agent is authorized to do any and all things necessary to enable him to take care of and preserve the property but this authority extends no further.

(180)

If necessary to prevent a person from stealing the property, he is authorized to cause the arrest of such person, not in order to punish him, but to prevent the theft, and in such case an agent has no implied authority to prosecute after an alleged theft has been committed.

APPEAL from the circuit court of Noxubee county. HON. T. B. CARROLL, Judge.

Suit by J. T. Westmoreland against Walter S. Fisher et al. From a judgment for plaintiff defendant appeals.

The appellee was running a sawmill. He broke his circular saw, and, being in a hurry to get out a bill of lumber, he sent a negro in his employ to an old, abandoned mill in the neighborhood, which he knew was for sale, and which belonged to Walter S. Fisher, and instructed him to get a saw, and bring it to appellee's mill, and see if they could use it. The negro brought the saw, and appellee tried to fit it on his mill, but found he could not use it, and directed the negro to take it back to Fisher's mill. The negro carried it to his own house, where it remained for several days. Fisher lived in another county. In the meantime Fisher's agent, T. W. Crigler, who had been for some time trying to sell the mill, made inquiry about the missing saw, and was informed that Westmoreland had taken it to his mill. While Westmoreland was endeavoring to attach it to his mill, he broke a part called the "mandrel." Upon ascertaining the whereabouts of the saw, Crigler went to the appellee, and told him that Fisher would be mad about it, as he was endeavoring to sell the mill, and advised appelee to go to West Point and see Fisher about it. Appellee did so, and explained the circumstances to Fisher, who then proposed to sell him the machinery for a price which Westmoreland thought too high. Fisher then told appellee that he would write him later.

Thereafter Fisher wrote his agent, Crigler, at Macon, Miss., the following letter: "West Point, Miss., 6/22, 1910. Mr. T. W. Crigler, Macon—Dear Crigler: Mr.

Westmoreland has been up here, and we had a talk about the stuff gone from the mill, and while I want to do the right thing by Mr. Westmoreland, still I have lost the sale of the mill, that can only be attributable to him, and I know that I am treating him as I would want to be treated when I sell him the outfit at what I have in it, which is six hundred and seventy-eight dollars. I am sure this is fair and if not I cannot see why, as I am loser in the transaction, as I would have gotten eight hundred dollars if it had not been tampered with. I also told him to pay one hundred dollars down and balance by December 15th, in notes to suit his convenience, and if this does not suit him this is authority for you to swear out warrant for the negro that took the stuff as my agent. I think Mr. Westmoreland a fair fellow and I anticipate no trouble. Yours, W. S. Fisher.'' Thereafter Crigler swore out an affidavit against the negro and Westmoreland, charging them with grand larceny. The case was dismissed by the court after hearing the statements of the defendants. Westmoreland then brought suit against Fisher and Crigler for malicious prosecution, which resulted in a judgment against both defendants jointly for the sum of five hundred dollars, from which each defendant prosecutes a separate appeal.

The declaration contains the following language: ''The said affidavit was made by the said Crigler as the agent for and at the instance and request and upon the direction of the defendant Fisher; both the said Crigler and the said Fisher knowing full well at the time same was made and directed to be made that the said charge was not true that plaintiff had committed the crime of larceny or any other crime with respect to the said Fisher's property; but the affidavit was made by the said Crigler for the said Fisher upon his (the said Fisher's) request and direction, and as the agent of the said Fisher, without probable cause and with malice,'' etc.

*Gates T. Ivy* and *A. F. Fox,* for appellant.

It is contended that, in as much as Crigler was the agent of Fisher and charged with the superintendence and care of the property involved, the authority to prosecute for stealing the property, in some way, inhered in, and grew out of this general authority to take care of the property, and was incident thereto; in other words was in the scope of this general authority.

This contention might well be met by the fact, as conclusively shown by the evidence, that Crigler did not make the affidavit for larceny under his general authority as such caretaker. He never would have acted at all in the prosecution if he had not received the letter. The contention of counsel might also be met by the mere statement this is not the case made by plaintiff's declaration. The declaration does not allege that Crigler made the affidavit against Westmoreland under his general authority as caretaker of the property, and acting within the scope of that authority. On the contrary, it distinctly alleges that the affidavit was made by Crigler "at the instance and request and upon the direction of Fisher."

But for the sake of argument, let us meet counsel upon their own ground, and see to what conclusion the law and the facts will lead us.

The facts of the case are that Fisher was the owner of an unused sawmill several miles from the city of Macon where Westmoreland resided and where he operated a mill of his own. The saw at Westmoreland's mill having been injured, Westmoreland sent the negro, Duran, with a team out to Fisher's mill, which was not in operation, with instructions to take the saw and bring it home, which the negro did, and broke the mandrel, in taking the saw off. This was about the 1st of May, according to the testimony. The affidavit for larceny was made against Westmoreland and the negro on the 27th of June, six or seven weeks afterward. Crigler

also lived in the city of Macon and was employed as salesman by the Fisher Company, of which Fisher was president. This company was a mercantile concern at West Point. The Fisher and other creditors had purchased bankrupt stock of goods at the mill, and Crigler was made trustee. After this was mostly sold out, Fisher bought the old mill, and Crigler who visited the mill two or three times a month was directed by Fisher to look after the mill property. This was the whole extent of his authority as agent. Some weeks after the saw was taken, Crigler missed it and instituted an investigation, and after two weeks search, from that time it was in possession of Westmoreland and was at his mill in Macon. Instead of having Westmoreland arrested, the idea not occurring to him that it was his duty or that he was authorized to do it, he reported it to Fisher and saw Westmoreland and as a friend, advised him to go to see Fisher about it. He never acted in the premises any further until he received Fisher's letter, when he took steps to have the negro alone arrested, and on consulting an attorney and the justice of the peace included Westmoreland in the affidavit, not on the authority of the Fisher, but solely on his own responsibility under the advice of his lawyer. This is the whole story. What is the law?

A well considered case is *Markely* v. *Snow,* 207 Pa. S. C. —, 64 L. R. A. 685. This is a case, where an action for malicious prosecution was instituted against a partnership engaged in selling and mining coal. The plaintiff was arrested for burning defendant's barn, at the instance of defendants superintendent who had the care and management of the property. The plaintiff was arrested three months after the barn was burned. The question was whether the arrest, was an act within the implied power of the superintendent, done in the course of his employment. The court say:

"Undoubtedly, a principal may be held liable for the act of his agent in instituting a malicious prosecution.

But the act of the agent becomes that of the principal
only when expressly authorized, or when his authority
to act may fairly be inferred from the nature and scope
of his employment.  Generally the duty of superintend-
ence does not carry with it the duty to arrest or prose-
cute.

"The inference of authority to do either does not arise
from the mere fact of agency.  The authority may be
implied when the arrest is made by the agent in the ab-
sence of the principal for the protection of the prop-
erty that is in danger or where the crime is being per-
petrated.  This principle has been uniformly recognized
in the decisions on the subject.  Railroads have been
held liable for unlawful arrest of passengers by con-
ductors for the nonpayment of fare; and the employer
for the arrest by a superintendent for shoplifting, de-
tected, it was supposed, in the act, by a floor walker; for
the arrest by a ticket agent on a charge of causing dis-
order in a theater."

"On the other hand the trend of decisions is against
holding the principal liable when the arrest was made
after the supposed crime had been committed, and not
for the protection of his property."  *Daniel* v. *Atlantic
C. L. R. Co.*, 136 N. C. 517, 67 L. R. A. ——; *Central
R. Co.* v. *Brewer*, 27 L. R. A. (Md.) 63; *Mulligan* v.
*R. Co.*, 14 L. R. A. (N. Y.) 791; *Bernheimer* v. *Becker*,
3 L. R. A. (N. S.) (Md.) 221; *Carter* v. *Howe Machine
Co.*, 51 Md. 290, 34 Am. Rep. 311; *Little Rock Traction
Co.* v. *Walker*, 40 L. R. A. 473; *Richberger* v. *Express
Co.*, 73 M. 165, 18 Am. and Eng. Ency. Law, 659; *Three-
foot* v. *Nuckols*, 68 Miss. 125, 19 Am. and Eng. Ency.
of Law, 685; *Shannon* v. *Simms*, 40 So. 574 (Ala.); *Kehl*
v. *Hope*, 77 M. 762.

*Geo. Richardson* and *Flowers, Alexander & Whitfield,*
for appellee.

It seems to us that it would not be easy to find a more
perfect model to illustrate the rule that an agent may

bind his principal in the doing of things which are within the scope of his authority but not within the terms of the express directions given to the agent. Of course if a principal could itemize the agent's duties and relieve himself from the consequences of acts of the agent not so itemized or enumerated there would be few cases left to be tried against the principal. While the agent is doing the things which he is specifically directed to do he does other things which the principal wishes to disclaim. Here the agent signed one affidavit charging two men with the commission of a crime. He was acting as agent for Fisher so he thought. He was specifically authorized to handle this particular transaction and he was the general agent of Fisher too with respect to this property. Fisher admits authorizing him to make the affidavit against Jesse. He learned that Westmoreland was more guilty than Jesse so he just inserted his name in the affidavit. He went very slightly beyond the letter of his conceded authority and he did the act while using the authority given. Crigler says that whatever he did he did for Mr. Fisher; that he had no personal interest in it. He was not an officer.

In the case of *Richburger* v. *Express Co.*, 73 Miss. 161, it was not pretended that the agent of the express company had any authority to administer corporal punishment to the patrons. When he attacked Richberger he was acting upon his own account to satisfy his personal grievance. He went far beyond any express authorization. If his duties had been enumerated by the company in advance there would have been no mention of assaults and batteries upon persons who might have occasion to demand, the correction of mistakes.

In the case of *Rivers* v. *Y. & M. V. R. R. Co.*, 90 Miss. 196, it was not required to be shown that the employee who wrote the slanderous letter had authority to do this thing. He did have some authority to do this thing. He did have some authority which he was using at the

time he did what he was not authorized to do. He had directions to make investigations of books and report thereon. While doing this he did a wrongful and unauthorized act. He wrote falsely about Rivers. He was doing it for the benefit of the employer.

In *Railway Company* v. *Brooks*, 69 Miss. 168, the persons who wrote the various letters and reports about the missing baggage were men employed to serve the company and not to write libels. They had no written authority to bind the employer by their expressions of opinion as to the guilt of Brooks. While performing a duty they were engaged to do they did a thing which was unauthorized. They went beyond their duty and their express authority. They went beyond the letter but were still within the scope of their authority.

In *Williams* v. *Planters Ins. Co.*, 57 Miss. 759, an agent having no express authority so to do, seems to have made affidavit against Williams charging him with the crime of arson. The court held that the insurance company for which the agent was acting could be held to answer in the suit for malicious prosecution. The court said corporations must answer for the acts of their agents just the same as natural persons; page 764. We say now, from the modern viewpoint, that individuals can be held for the act of their agents just the same as corporations.

It was not made to appear in *McGourik* v. *Western Union*, 79 Miss. 632, that the agent who sent the improper and foolish message was doing something which he was employed to do. On the other hand it was very clear that he was employed for no such purpose and in sending the message in question he was acting against the best interests of the company and was launched upon an enterprise for his own personal entertainment. If the company had known he would do such a thing he would never have been employed. Yet the company was said to be liable for the agents wrongful act in sending

a slanderous message involving the plaintiff's good name.

In the new Encyclopedia of Law and Practice, vol. 2, pp. 1204 and 1205, it is said:

"Modern Rule.—The present view is that acts done with in the general scope of the agent's authority, while he is engaged in the principal's business render the principal liable even though they are wanton, wilful, or malicious. But when the agent steps aside from the business of his principal and wantonly and maliciously commits an act to accomplish an independent purpose of his own the principal is not liable therefor, unless such an act has been previously authorized or is subsequently ratified." *Gretzen* v. *Duenckel,* 11 Am. Rep. 405, 411; *Magor* v. *Hammond,* 3 L. R. A. (N. S.) (N. Y.) 1038; *Jackson* v. *Am. Tel. & Tel. Co.,* 70 L. R. A. 738; note to *Waaler* v. *Great Northern R. R. Co.,* 70 L. R. A. (S. D.) 733, 31 Cyc. 1585.

Argued orally by *A. F. Fox,* for appellant.

Argued orally by *J. N. Flowers,* for appellee.

SMITH, J., delivered the opinion of the court.

The principal is liable for the act of his agent in instituting a criminal prosecution maliciously and without probable cause, if the institution of such prosecution was expressly authorized or subsequently ratified by the principal, or was within the scope of the agent's employment. In the case at bar the act of Crigler in instituting the prosecution complained of was never ratified by appellant, and he had no express authority to institute such a prosecution, unless it is contained in the letter written to him by appellant on June 22, 1910, which the reporter will set out in full.

A mere inspection of this letter demonstrates that it contains no such authority. A proposition looking to the sale of the mill to appellee, as an adjustment of the

damage sustained by appellant by reason of the taking of the saw and the breaking of the mandrel, was pending between appellant and appellee, and this letter advised Crigler, who was assisting appellant in this negotiation, on what terms appellant would sell the mill, and authorized him, in event the terms of sale were not satisfactory to appellee, to institute a prosecution against the negro, who, at the request of appellee, had taken the saw. Granting, therefore, that this letter authorized Crigler to sell the mill to appellee upon certain terms, authority to sell property does not include authority to prosecute for a theft. And, moreover, the letter, by reason of its express direction to prosecute the negro, excluded any authority to prosecute any other person. *"Expressio unius est exclusio alterius."*

Unless, therefore, the institution of such prosecution comes within the general authority confered upon Crigler by reason of his being in charge of the mill as caretaker, appellant is not liable therefor. As such caretaker Crigler was authorized to do any and all things necessary to enable him to take care of and preserve the property; but his authority extended no further. If necessary to prevent a person from stealing the property, he was authorized to cause the arrest of such person, not in order to punish him, but to prevent the theft. The prosecution complained of was not instituted in order to prevent a theft of the property; for appellee's act, whatever it amounted to, upon which the charge of theft was based, had been committed some time before, and the prosecution could only have resulted in punishing him therefor.

It follows, from the foregoing views, that Crigler's act, in instituting the prosecution, was clearly without the scope of his authority. *Markely* v. *Snow,* 207 Pa. 447, 56 Atl. 999, 64 L. R. A. 685; *Daniel* v. *Railroad, Co.,* 136 N. C. 517, 48 S. E. 816, 67 L. R. A. 455, 1 Ann. case. 718.                         *Reversed and remanded.*