## A. G. Russell v. Palatine Insurance Co.

[63 South. 644.]

1. PRINCIPAL AND AGENT. *Evidence. Malicious prosecution. Authority to prosecute.*

   The fact of agency may be presumed from the natural improbability that one should voluntarily, without authority, assume to act for another, settling his obligations for a considerable length of time, and from the fact that such conduct would naturally come to be known by the assumed principal.

2. MALICIOUS PROSECUTION. *Agent. Authority to prosecute.*

   One who was employed by an insurance company to collect its claim against a former agent, was authorized to employ all appropriate means to accomplish this end, and while he is employing appropriate means to carry out his master's business the master is responsible for his acts, but he is not authorized to institute a prosecution for embezzlement for that purpose, and the employer will not be liable for malicious prosecution if he does so.

APPEAL from the circuit court of Warren county.
HON. H. C. MOUNGER, Judge.

Suit by A. G. Russell against the Palatine Insurance Company and another. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*J. C. Bryson, Anderson, Vollor & Kelly,* and *Hirsh, Dent & Landau,* for appellant.

Was not Klein in his conversations with Clark seeking to sell the Russell & Moore agency solely for the purpose of paying what was due to the Palatine Insurance Company by them? Was not the Palatine the owner of the agency? Were not the bonds referred to by him bonds given by Russell & Moore to the Palatine? In fact did not all that was said or done between Klein and Clark pertain to the business of the Palatine Insurance Company, and have particular reference to the collection of the amount due that company by Russell and Moore? Did not the conversation with Zeigler pertain also to the collection of what was owing by E. P. Jones & Co. (in which Russell & Moore were interested) to the Palatine Insurance Company? The answer to all these questions must be in the affirmative. Can it then be said that they do not tend to establish the agency of Klein to act for the Palatine? We take it that the court in excluding the testimony of Clark and Zeigler had in mind the line of decisions by this court in which it has repeatedly held: ''That agency cannot be established by the mere declaration of the supposed agent.'' *Kinnare* v. *Gregory,* 53 Miss. 612; *Memphis, etc., R. Co.* v. *Cocke,* 64 Miss. 713; *Southern Home Building, etc., Co.* v. *Butt,* 77 Miss. 944.

As we conceive it, this line of decisions does not reach the facts of this case. Klien was not stating merely the fact of his agency, or relating the history of past transactions, but he was actually engaged in the service of the Palatine Company and his statements had reference to the immediate business on hand, and were, therefore, a part of the *res gestae* and in the nature of admissions against interest. As such they were admissible to show the scope of Klien's agency. Besides there was much other testimony tending to establish the same fact such as the records from the Insurance Commissioner's office, the letters from Janvier & Lee and the testimony of

Moore and others. In such cases declarations are admissible as corroborative evidence of agency. In this regard we quote from 1 Ency. of Law (2 Ed.), 791, as follows: "But after the fact of agency is established by other evidence, it is a well-settled rule that the declarations of an agent, made while acting within the scope of his authority and during the continuance of his agency in regard to transactions depending at the very time, may be given in evidence against his principal as a part of the *res gestae;* and it is the same whether the *res gestae* is one that is especially authorized by the principal's instructions, or one which the agent performs in the exercise of the general discretion intrusted by the principal."

In *Eagle Iron Co.* v. *Baugh,* 147 Ala. 613, 41 So. 663, the supreme court of Alabama said: "On an issue as to the existence of an agency, any declaration by the agent as to his authority is admissible, when other evidence exists from which authority may be inferred."

In *Gazzam* v. *German Union Fire Ins. Co.,* 155 N. C. 330, Annotated Cases, 1912, ch. 362, the supreme court of North Carolina said: "The competency of the declarations of an agent of a corporation rests upon the same principle as the declarations of an agent of an individual. If they are narrative of a past occurrence . . . they are incompetent; but if made within the scope of the agency while engaged in the very business about which the declaration is made, they are competent."

We submit that the conversations between Klein and Clark, and Klein and Zeigler, tended to show that Klein was acting for the Palatine and fall within the rule of the authorities above quoted and were for that reason relevant and pertinent and therefore admissible.

*As to Malice*: When Clark could not be induced to purchase the Russell & Moore agency Klein became exicted and referred to the bonds that Russell and Moore had given to the Palatine and the fiduciary relation that existed or was supposed to exist between Russell and Moore

and his company and suggested that criminal action could be taken if other means failed to collect the amount due. In this connection he said that Russell "was crooked," and that he could "send him and Moore to the penitentiary," that he was going "to make them pay" or words of similar import. Do not these expressions tend to show ill-will and bad feeling toward Russell? Undoubtedly they do. And were they not said in reference to the business of the Palatine Insurance Company? Clearly they were. For these reasons they were revelant and competent and the law makes them imputable to the company through Klein's agency and makes the company responsible for their legal consequence.

*As to want of probable cause*: Klein's statement to both Clark and Zeigler to the effect that he knew that the shortgage of Russell and Moore dated back to the failure of the Mississippi Home and their undertaking to save their customers harmless by the substitution of other policies demonstrated that Klein knew that Russell & Moore were not guilty of embezzlement, that the money that they owed his company was not money they had actually collected but merely premiums they had assumed but failed to collect for and were then unable to pay. This was not a mere detail of a past event but it was the statement of fact which at that time was in Klein's memory and as such was to be regarded by him in his dealings with Russell & Moore pertaining to the company or its business. It demonstrated that in the beginning of these transactions he was cognizant of a fact which precluded the idea of guilt as to either Russell or Moore and therefore showed that Klein was not actuated by a desire to see the law vindicated but solely for the purpose of collecting a debt due his company.

The criminal prosecution was a mere means to an end and that end was the collection of what Russell & Moore owed his company. This was the business of his company and whatever he did in reference thereto was and

is imputable to it. *Williams* v. *Planters Insurance Co.,* 57 Miss. 579, 60 Miss. 916; *King* v. *I. C. R. R. Co.,* 69 Miss. 245 and 852; *Richberger* v. *American Express Co.,* 73 Miss. 161; *Rivers* v. *Y. & M. V. R. R. Co.,* 90 Miss. 196, 93 Miss. 557.

We submit that the testimony of these witnesses under the facts presented by the record was relevant and therefore admissible, and that it was reversible error in excluding it as to the Palatine.

*McLaurin, Arimstead* and *Brien,* for appellees.

In debating the question of whether or not the Palatine Insurance Company directed or instigated the indictment of Russell & Moore, it necessarily brings into review the question of whether or not Klein was the agent of the Palatine Insurance Company, authorized to institute this prosecution, or whether it was within the scope of his authority, or had such action been ratified by the Palatine Insurance Company?

We deny, as a matter of law, that the special agent, authorized to establish agencies and to see after their proper remittances of premiums, thereby necessarily has the power to indict the local agent for which his principal would become responsible. No such conclusion follows: We respectfully submit that this case is controlled by the opinion of the supreme court of Mississippi in the case of *Fisher* v. *Westmoreland,* reported in 57 So. 563, decided December 18, 1911.

The above case of *Fisher* v. *Westmoreland* absolutely destroys, we respectfully submit, the whole argument of the appellants in this case in that they have offered no proof on the crucial point of showing the authority of W. B. Klein to bind the Palatine Insurance Company. They make no effort to show any special authority to institute the criminal prosecution against Russell & Moore; they make no effort to show that this prosecution was subsequently ratified, unless it be that their ef-

fort to submit interrogatories to the nonresident defendant, the Palatine Insurance Company, was an effort, if possible, to dig up a ratification. At any rate, no such ratification appears in any respect from these interrogations. Then the only remaining possible hope of their binding the Palatine Insurance Company by the act of Klein, is to claim that it was within the scope of Klein's authority as special agent without showing the court what authority Klein did have as special agent.

We, therefore, respectfully submit that the case falls flat on the failure of the plaintiffs to prove what W. B. Klein's authority was from the Palatine Insurance Company or Janiver & Lee, their general agents, so as to determine whether or not he was acting within the scope of his authority in presenting Russell & Moore to the grand jury. Any statement of Klein's in reference to threatening a prosecution can have no weight whatever in determining the scope of Klein's authority for this suit is bottomed on the proposition that a malicious prosecution had been started against Russell & Moore by Klein appearing before the grand jury and it makes no difference, if the court please, we respectfully submit, what threats Klein may have made about instituting a criminal prosecution if in fact and in truth he had no authority to do it, threatening to do it certainly would not give him the authority and could not, by any possibility bind the principal.

Counsel for appellant in their brief say that the Palatine Insurance Company was the owner of the agency that Klien was seeking to sell to Clark when it is claimed that Klein told Clark that Russell was "crooked." Counsel has left the record entirely. There is no fact in this record at all which proves, or tends to prove, that the agency belonged to the Palatine Insurance Company. On the contrary, the agency belonged to Russell & Moore. They were agents for numerous insurance companies — the Palatine was simply one among them—they were trying

to sell the agency with the understanding that if they could sell it that the Palatine Insurance Company would remain in the agency and allow the purchasing party to become the agent of the Palatine. This the Palatine Insurance Company declined to do because they did not know what kind of a representative this matter of dealing would put them in the hands of, or make them become liable for. Counsel cites Encyclopedia of Law, that the declarations of an agent will bind the principal while acting within the scope of his authority after the fact of agency is established by other evidence. We cheerfully agree to this proposition, but what we are talking about is that there is not one word, line, letter or syllable in this entire record that shows that Klein was authorized to report Russell & Moore to the grand jury, or that the Palatine Insurance Company, or Janvier & Lee ratified his act in doing so, or that it was within the scope of his authority as a special agent to report Russell & Moore to the grand jury; and under the case of *Fisher* v. *Westmoreland, supra,* in the absence of these three requirements in the record, the principal cannot be bound by any act of the agent in instituting a malicious prosecution, which is this case. *Mangum* v. *Ball,* 43 Miss. 288; *Fox* v. *Fish,* 6 How. 328; *Bush* v. *So. Brewing Co.,* 69 Miss. 200; *Planters Bank* v. *Cameron,* 3 Smedes & Marshall, 609; *Malone* v. *Robinson,* 12 So. 709; *Fox* v. *Fish,* 6 H. 328; 3 Miss. Dig., p. 103; 56 Conn. 493; *Bush* v. *So. Brewing Co.,* 69 Miss. 200, 13 So. 856.

We will not cite authorities from the Mississippi court to show that Klein's agency could be proven by the declarations of Klein. It is primary learning in this State, that an agency can never be established by the declaration of the agent. If, therefore, there is no proof of direct authority in this record (which we earnestly deny) that W. B. Klein, the special agent, was authorized to institute the criminal prosecution against Russell & Moore, the case must fail for the reason that there is no

scintilla of proof that it was ratified by the Palátine Insurance Company or its general agents, Janvier & Lee. We respectfully submit, therefore, that the proof of the plaintiff in this case falls far short of showing that the institution of the criminal prosecution against Russell & Moore by W. B. Klein was within the scope of Klein's authority as special agent, or that it was authorized or ratified by the Palatine Insurance Company. This being so, under no circumstances could the Palatine Insurance Company have been held liable in this suit, and it is the one that these parties are seeking to reach.

COOK, J., delivered the opinion of the court.

Appellant filed this suit against the Palatine Insurance Company, appellee, and W. B. Klein, the special agent of said company, for malicious prosecution. At the close of the evidence the court instructed the jury to find a verdict for each of the defendants. This appeal is from the judgment in favor of the Palatine Insurance Company; no appeal having been instituted from the judgment for Klein.

Many interesting questions are presented by the able and exhaustive briefs filed by counsel for both sides of this controversy, but we deem it only necessary to discuss the point which is necessarily determinative of this appeal.

Appellant was the local agent for the insurance company and fell behind in the payments of his accounts due to the company for premiums on policies issued by him, which premiums he had collected from the policy holders or he owed to the insurance company by his contract with it.

W. B. Klein was the special agent of the insurance company, and as such he was authorized to suspend, check up, and settle with the local agents of the company. The scope of his agency is assumed for the purpose of this appeal, for, as a matter of fact, it is not altogether clear

from the record what authority Klein actually had to act for the insurance company. His authority is largely established by proof of his declarations and acts, but we will consider him as the authorized agent of appellee for the purposes mentioned.

"From the natural improbability that one should voluntarily, without authority, assume to act for another, settling his obligations for a considerable length of time, and from the fact that such conduct would naturally come to be known by the assumed principal, the fact of agency may be presumed." *Neibles* v. *Railroad Co.*, 37 Minn. 151, 33 N. W. 332.

Klein checked the books of appellant, and the amount due the company was ascertained and agreed upon. Various efforts were made to collect the balance, and various expedients were suggested by appellant and by Klein whereby this end could be reached, none of which "panned out" anything. The effort to collect and the conferences between Klein and appellant seem to have ended some time near the 1st of March, 1911.

The grand jury at the April term, 1911, indicted appellant for embezzlement of the company's funds; this indictment having been returned solely on the evidence of Klein, who appeared before the grand jury voluntarily, never having been subpoenaed as a witness. The jury at the trial of this indictment acquitted appellant, and it is upon this prosecution this suit is based.

There is nothing in the record to suggest that the insurance company was advised of this indictment, or that they ratified the action of Klein in bringing about the prosecution; but it is earnestly insisted that Klein acted within the scope of his authority when he volunteered as a witness against appellant.

This court in *Fisher* v. *Westmoreland*, 101 Miss. 180, 57 So. 563, cited with approval *Daniel* v. *Railroad Co.*, 136 N. C. 517, 48 S. E. 816, 67 L. R. A. 455, 1 Ann. Cas. 718. In that case the supreme court of North Carolina held:

"The appointment of one as cashier at a railway station, with power to collect money, give receipts, sell tickets, take care of the money received, and forward it to the treasurer of the company, does not empower him to arrest persons whom he suspects of having stolen money which has come into his possession so as to render the railroad company liable in case he causes the arrest of an innocent person." Judge Walker, speaking for the court, said: "The circumstances under which they pursued this man, without the warrant of the law, even to his bedchamber and at the silent hour of midnight, arousing him from his peaceful slumbers, invading the sancity and privacy of his room, which the law surrounded with its protection as much so as if it had been his home or his castle, subjecting him to such indignities as no self-respecting man could submit to, even under compulsion, without feeling that he had been humiliated if not degraded by them, marching him through the office of the hotel and down a public street where any and all might see the infamy and disgrace which they had fastened upon him, all these things and more they did which made their offense against him, if the evidence be true, a very serious one, and to him they and all who participated in causing his arrest are responsible before the law and they must reckon with him if he sees fit to call them to account. But we must not allow any feeling of indignation at the grievous wrongs inflicted upon the plaintiff (which cannot be too severly condemned, if, as we must assume, he is an innocent man) to withdraw our attention from those principles of that same law by which the defendant's rights are guarded."

It will be seen from this graphic description that plaintiff in that case was most outrageously treated and gratuitously humiliated by the agent of the railroad company. The court then states the plaintiff's contention and the court's response thereto as follows: "The plaintiff's sole contention is that what Atkinson did at Green-

ville, and Meacham at Kinston, was within the line of
their duty and the scope of their employment, and there-
fore they had implied authority from the defendant to
do what they did, upon the theory, we suppose, that every
authority carries with it, or includes in it, as an incident,
all the powers which are necessary, proper, or usual as
means to effectuate the purpose for which it was con-
ferred, and that consequently when an agency is created
for a specified purpose, or in order to transact particular
business, the agent's authority, by implication, embraces
the appropriate means and power to accomplish the de-
sired end. He has not only the authority which is ex-
pressly given but such as is necessarily implied from the
nature of the employment. Story, Agency (9 Ed.), par.
97. This is the general rule, and the doctrine of *respond-
eat superior* is a familiar one. But in our opinion it has
no application to the facts of this case. If we should hold
that it is so broad in its scope as to include a case like
this one, it would lead to most dangerous consequences.
For us to say that an agent can by his acts subject his
principal to liability in damages to any one injured by
his said acts, done when he was not about his master's
business, and had no express or implied authority to do
them, but was merely seeking to avenge a supposed
wrong already committed or to vindicate public justice,
would be carrying the doctrine of *respondeat superior*
far beyond its acknowledged limits. A servant intrusted
with his master's goods may do what is necessary to
preserve and protect them, because his authority to do so
is clearly implied by the nature of the service; but when
the property has been taken from his custody or stolen,
and the crime has already been committed, it cannot be
said that a criminal prosecution is necessary for its pres-
ervation or protection. This may lead to the punishment
of the thief or the trespasser, but it certainly will not
restore the property or tend in any degree to preserve or
protect it. It is an act clearly within the scope of the

agency and cannot possibly be brought within the limits of the implied authority of the agent."

In the case of *Markley* v. *Snow,* 207 Pa. 447, 56 Atl. 999, 64 L. R. A. 685, also cited in *Fisher* v. *Westmoreland, supra,* it is held that: "Employees of a mining partnership, who are charged with the care and management of its property, do not act within the scope of their employment in causing, long after the commission of the crime, the arrest, for the purpose of vindicating the law, of one who is suspected of having set fire to a building belonging to the partnership, so as to render the partnership liable for malicious prosecution in case the arrest proves to have been without justification."

An express company is not liable for the wrongful acts of its agent at its office in a city, in charge of its business there, in causing the arrest of one for larceny from the office, unless it authorized or ratified the act. *Minter* v. *Express Co.,* 153 N. C. 507, 69 S. E. 497.

Mr. Klein was employed by the insurance company to collect its claim against appellant, and he was authorized to employ all appropriate means to accomplish this end; and, while the agent is employing appropriate means to carry out his master's business, the master is responsible for his acts. Certainly it cannot be said that a criminal prosecution is a means appropriate to the collection of debts. In *Dally* v. *Young,* 3 Ill. App. 39, it is said: "Where an agent institutes a malicious prosecution of his own head, and without the instigation or directions of his principal, the latter will not be liable for the same, unless he adopts and continues the same with knowledge of all the circumstances."

Should we hold that appellee was responsible for the acts of Klein, it would be to hold, when an authority to collect a debt is shown, the law will imply the authority to institute criminal proceedings against the debtor in case the debtor fails or refuses to pay. We do not believe that this is sound in reason or in law.

*Affirmed.*