YOUNG *v.* L. B. PRICE MERCANTILE CO.

(En Banc. June 5, 1933. Suggestion of Error Overruled Oct. 9, 1933.)

[148 So. 643. No. 30560.]

**W. M. Denny, Louis Cochran** and **Howorth & Howorth,** all of Jackson, for appellant.

**Lotterhos & Travis** and **Roy Arnold,** all of Jackson, for appellee.

Argued orally by **Louis Cochran,** for appellant, and by **Fred Lotterhos,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action in the circuit court of Hinds county against appellee to recover damages for a malicious prosecution alleged to have been instituted by appellee against appellant. At the conclusion of appellant's testimony, on motion of appellee, the court excluded all of appellant's evidence and directed a verdict and judgment in favor of appellee. From that judgment appellant prosecutes this appeal.

For the purposes of the question to be decided, the following is deemed a sufficient statement of the case: Appellee operates a number of chain stores in Mississippi and other states. It sells its goods through peddlers who travel the country for that purpose in automobiles. Appellant was one of its peddlers. Mr. Morris was appellee's district manager with headquarters at Jackson; he had general supervision over appellee's stores in his district. His district consisted of Mississippi and probably parts of Louisiana and Arkansas. Mr. Matthews was the manager of one of appellee's stores at Leland, in Washington county. For certain reasons Morris directed appellant to turn over to appellee his peddler's stock of goods. Appellant refused to do so, claiming that appellee owed him commissions for goods already sold; he agreed to turn the goods over to appellee when these commissions were paid. Morris undertook to show appellant that this could not be done until the claim went through the usual routine, which would take some time. On appellant's failure to turn over the goods, Morris instituted in the court of a justice of the peace of Hinds county a prosecution against him for embezzling the goods. Appellant was arrested and imprisoned in Hinds county for some days. Later, Matthews, appellee's store manager at Leland, instituted the same character of proceedings against appellant before a justice of the peace of Washington county, based on the same facts, whereupon appellant was taken to Washington county and kept in jail for some days. Appellant was never tried in either

of the prosecutions. He was turned out of jail in Washington county without any order or judgment of any court, so far as the record shows, and it is not shown clearly on whose order appellant was given his liberty; however, there is an entire absence of any evidence tending to show that appellee had anything to do with either of the prosecutions, knew of either of them, or in anywise authorized or ratified either of them.

Appellee's position is that Morris and Matthews, its agents, were acting without the scope of their authority in instituting these prosecutions, and therefore there is no liability therefor on its part. It should be borne in mind in considering this question that Morris was the district manager or superintendent of appellee's chain of stores in Mississippi and certain adjacent territory, and that Matthews was the manager of one of its local stores at Leland. In other words, each store had its own manager, and Morris was the manager over the whole. The courts are divided as to whether the master is liable under such a state of facts.

In discussing the question, Labatt, in his work on Master and Servant (2 Ed.), volume 6, section 2469, used this language:

"The theory which seems to be embodied in several American decisions is, that a general or departmental manager possesses, by virtue merely of the functions ordinarily intrusted to such an agent, an implied authority to arrest or prosecute a person whom he believes to have done something which prejudicially affects the property of his principal. The cases cited below indicate that this view has been adopted in Scotland and Quebec also.

"On the other hand, the doctrine that, even where an employee of this rank is concerned, it cannot be presumed from the sole circumstance of the position held by him that he was empowered to take such a proceeding on behalf of his employer has been adopted in England, and also in nearly all the British colonies in which the matter has been discussed. A similar view has been adopted in

Alabama, Illinois, Maryland, Michigan, and Pennsylvania. . . .

"As several courts of the highest authority have pronounced in favor of each of the conflicting doctrines reviewed above, a commentator cannot, without undue presumption, offer any decided opinion regarding the matter. It will be sufficient to say that, in the opinion of the present writer, the preferable theory is that which treats the discharge of managerial functions by an employee as being an element which does not of itself justify the inference that he is impliedly authorized to put the criminal law in motion against an actual or supposed offender. That this general rule will ultimately be conceded by the courts which follow it to be subject to some qualifications is extremely probable. So much, it is apprehended, may reasonably be inferred from the suggestions thrown out in the judgment delivered in one of the English cases. It may fairly be contended that the master should, at all events, be held liable for the acts of a tort-feasor who is, in the proper sense of the expression, his alter ego, vested with full discretionary powers in regard to the conduct of the business and all its incidents."

In the same volume, section 2472, the author states that employees authorized to demand and receive money owed their employers cannot subject the latter to liability for damages "on the mere ground of the functions normally discharged by them." Labatt shows that the rule which he thinks is the sounder and better has been adopted in England and nearly all the British colonies, and in Alabama, Illinois, Maryland, Michigan, and Pennsylvania. Our court has aligned itself with those courts. Fisher v. Westmoreland, 101 Miss. 180, 57 So. 563, Ann. Cas. 1914B, 636; Russell v. Palantine Ins. Co., 106 Miss. 290, 63 So. 644, 645, 51 L. R. A. (N. S.) 471; and Craft v. Magnolia Stores Co., 161 Miss. 756, 138 So. 405, which is less in point. The first two cases are directly in point.

In the first case cited, the person instituted the alleged malicious prosecution had the custody, control, management, and the power to sell a sawmill plant. He insti-

tuted a prosecution against the plaintiff in the case for the theft of a part of the machinery of the plant. The prosecution failed. Thereafter the person prosecuted brought an action against the owner of the sawmill for damages for malicious prosecution. The court held that the owner of the sawmill was not liable.

In the second case referred to, Klein was the district agent of the insurance company authorized to check up and settle with local agents of the company and collect from such agents the premiums going to the company. He found Russell, the plaintiff in that case, short on premiums due the company. Russell failed to pay on demand. Klein instituted a prosecution against him for embezzling the premiums. The prosecution failed. Russell sued the insurance company for malicious prosecution based on that action of Klein's. The court held that the insurance company was not liable. In discussing the question the court used this language:

"Mr. Klein was employed by the insurance company to collect its claim against appellant, and he was authorized to employ all appropriate means to accomplish this end; and, while the agent is employing appropriate means to carry out his master's business, the master is responsible for his acts. Certainly it cannot be said that a criminal prosecution is a means appropriate to the collection of debts. In Dally v. Young, 3 Ill. App. 39, it is said: 'Where an agent institutes a malicious prosecution of his own head, and without the instigation or directions of his principal, the latter will not be liable for the same, unless he adopts and continues the same with knowledge of all the circumstances.'

"Should we hold that appellee was responsible for the acts of Klein, it would be to hold, when an authority to collect a debt is shown, the law will imply the authority to institute criminal proceedings against the debtor in case the debtor fails or refuses to pay. We do not believe that this is sound in reason or in law."

The evidence in this case neither showed nor tended to show that Morris was appellee's alter ego, vested with

full and complete discretionary power in regard to the conduct of appellee's business, and all of its incidents. In such a case a different rule might apply. We do not decide that question.

Affirmed.

**Ethridge, J.**, delivered a dissenting opinion.

I am unable to agree with the majority that there is no liability due appellant by the appellee because of the arrest made at the instance of the manager for the appellee. The very term "manager" implies that the person so selected and designated has the control of the business, and that is especially true when the principal is a nonresident of the state.

It is clear to my mind that a manger of a state business has authority to recover from an agent or salesman goods intrusted to such agent, and to take any legal steps calculated to recover such goods, and if a manager, in exercising this power, acts wrongfully, or uses a method which his principal has not authorized, nevertheless, the principal is liable for the manager's torts, if he was acting within the scope of his employment and was about his master's business.

It seems to me that the majority has misconceived the principle that, if the act was done by a manager in the company's interest, and to further a purpose of recovering the company's property, such manager is acting within the scope of his authority and was about his master's business, although the method he used was not authorized by the master and not approved by the master after it was done.

The manager considered that, when the salesman refused to deliver the goods on demand, he was subject to arrest and prosecution for embezzlement, and had such prosecution instituted with full knowledge of all facts. A prosecution of this kind is one of the most effective legal procedures to serve that purpose, and also to deter others from doing likewise. It is true that replevin, un-

der the facts of the case before us, would have been an appropriate remedy. However, any person may resort to the criminal law for the purpose of taking goods from the possession of another, or to punish those who have violated the law in regard thereto.

The court below held that there was probable cause, and consequently there was no liability for the arrest. It did not place its decision upon the ground that the majority of this court now decides the case upon. As I understand the position of the majority, it did not think there was probable cause for making the arrest on the ground of embezzlement, but that the company is not liable because it was not within the scope of the manager's employment to do this thing.

If the manager was doing this thing in the protection of his master's business, calculated to coerce the salesman into surrendering the goods, then the company is liable for his act.

There are, perhaps, daily occurrences of arrest, not only to prevent a particular person from taking a particular article, but to deter all other persons from theft. Likewise, there are many prosecutions for embezzlement against employees, which are not instituted solely for the purpose of punishing the wrongdoer, but to deter others from so doing.

In Williams v. Planters Ins. Co., 57 Miss. 759, 34 Am. Rep. 494, it was held that a corporation may be held liable for a malicious prosecution conducted by its officers and agents just as if the corporation was a natural person. The same rule seems to be general upon this subject. In 34 C. J. 454, section 108, it is stated that: "While the contrary conclusion was reached in some of the earlier decisions, all of which have been overruled, either expressly or impliedly, it is now settled that a corporation may be liable for the malicious prosecution of a criminal action, instituted by its authorized agents, officers or servants in the carrying out of its policy, or in the furtherance of its business, although it may not have expressly authorized the act complained of or sub-

sequently ratified it. In these circumstances, the malice of the agent or servant will be imputed to the corporation, and where the agent or servant acted within the general scope of his authority in instituting a prosecution, the corporation is liable for his acts, although in doing the particular act, he may have disobeyed instructions''—citing many authorities in the footnote to this text.

It seems to me that it is the very essence of justice to require such responsibility.

In Jacques v. Childs Dining Hall Co., 244 Mass. 438, 138 N. E. 843, 26 A. L. R. 1329, it was held that, where a patron of a restaurant is detained for an unreasonable time pending an investigation as to whether or not he has paid his bill, such patron may recover damages for false imprisonment. See case notes to this opinion, page 1333 of 26 A. L. R..

In King v. I. C. R. R. Co., 69 Miss. 245, 10 So. 42, and Id., 69 Miss. 852, 13 So. 824, it was held that the railroad company was liable for the improper arrest of a person by its agent, although such agent had no express instructions to make arrests. It was also held in that case that the agent, notwithstanding his statutory authority to make such arrest, was, in reference thereto, the agent of the railroad company, and that his wrongful acts were attributed to the railroad company.

In England, the doctrine that the king could do no wrong long prevailed, but here this doctrine has long been discarded, and every person and corporation is responsible for its wrongs, and this principle is carried forward in section 24 of the Constitution of 1890, which provides that, ''for an injury done him in his lands, goods, person, or reputation, [every person] shall have remedy by due course of law.''

Of course, there could be no question about the liability of the manager, and section 24 of the Constitution would not apply to the case if the act of the manager was not within the scope of his authority. In this case, however, I am not able to see how it can be said that it was

not within the master's business and within the scope of the manager's authority, for the reason that there would have been no arrest except for the purpose of protecting the master's business.

I do not believe in permitting any person to escape responsibility in the operation of his business where he selects an agent or manager for that purpose, giving with such selection full power to act about all matters pertaining to the business.

The cases relied upon in the majority opinion from this state were decided on the theory that the agents there involved were limited agents, and not agents with general authority. On their facts, they may not have been properly decided, but they certainly were decided on the theory that the agents therein had only limited authority and not general authority.

GRIFFITH, J., concurs in this dissent.