BROWN *et al. v.* KISNER.

(In Banc. March 9, 1942. Suggestion of Error Overruled April 27, 1942.)

[6 So. (2d) 611. No. 34825.]

J. O. Eastland, of Ruleville, and Means Johnston and Berry D. Brown, both of Greenwood, for appellants.

B. B. Allen, of Indianola, and R. A. Jordan, of Green-wood, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This is a suit for damages on account of an alleged malicious prosecution of the apppellee Newell Kisner on a charge of criminal trespass instituted on December 28, 1940, by the filing of an affidavit signed by the appellant S. F. Jacobs, and the arrest and imprisonment of the appellee in pursuance thereof, while the affiant Jacobs was employed as a plantation rider or submanager on the "Little Ashland Plantation" in Leflore County, owned by the appellant W. P. Brown, but which plantation, the evidence on behalf of the defendants tends to show, was operated during that year in the name of his wife, Mrs. Margaret B. Brown, as lessee, and who is alleged by the defendants to have employed one Roy Anderson as her general manager and the defendant Jacobs as his subordinate to superintend the work of the tenants and look

after her property situated thereon, for the reason that the defendant W. P. Brown owned and operated on his own account several thousand acres of other farmland, elsewhere in the Delta than in Leflore County, and maintained his general office at Drew in Sunflower County, more than 20 miles from this plantation, looking after all of the plantations in a general way, including the one leased to his wife. There was a verdict and judgment for the plaintiff Kisner in the sum of $2,500 against both defendants, and they appeal.

It is immaterial for the purpose of this decision whether Jacobs was employed as a plantation rider by W. P. Brown or by his wife, Mrs. Margaret B. Brown, since the institution of the prosecution complained of was not within the scope of his employment as such in either event, and the only theory on which a recovery against the defendant W. P. Brown could be sustained is for the proof to show that Jacobs was acting under the authority and direction of said Brown or in the scope of his duties as such agent or employee, unless Brown acquiesced in the continuance of the prosecution by the agent or employee after being advised of its commencement. 38 C. J. 476, Sec. 147; Fisher v. Westmoreland, 101 Miss. 180, 57 So. 563, Ann. Cas. 1914B, 636; Russell v. Palentine Ins. Co., 106 Miss. 290, 63 So. 644, 51 L. R. A. (N. S.) 471; Young v. L. B. Price Mercantile Co., 167 Miss. 409, 148 So. 643.

The proof discloses that on Monday, December 23, 1940, one J. E. Greenlee, desiring to procure additional labor for his plantation in Sunflower County for the year 1941, sent his brother Dock Greenlee to the plantation in Leflore County on which the defendant Jacobs was employed, as aforesaid, for the purpose of arranging to move certain negro tenants who had expressed to him their desire or willingness to move to the Greenlee plantation. After arriving on the Brown plantation, Dock Greenlee was advised by the defendant Jacobs that it would be satisfactory for him to move these tenants provided he would

pay at least a part of their accounts which then remained unpaid for that year, and that otherwise he objected to him coming back on the place to move them; that they then finally agreed that unless the brother J. E. Greenlee was willing to pay the sum of $25 on each of the accounts Dock Greenlee would not again return to the plantation to entice the tenants away nor for the purpose of moving them; that this agreement was reported to J. E. Greenlee and both he and the plaintiff were fully advised that Dock Greenlee had been told by Jacobs not to come back on the place for the purpose of moving the tenants without first complying with the "gentleman's agreement" in that behalf, the plaintiff testifying that "Dock had carried the negroes back home one evening when they came over there and had been over twice to move them and Mr. Jacobs would not let them go;" and that thereafter, on Friday, December 27, 1940, the said Dock Greenlee and the plaintiff went to or near the homes of two of these tenant families, stopping their truck on the public highway, and moved them in the nighttime to the Greenlee plantation without the knowledge or consent of the defendant Jacobs, and in violation of their instructions from J. E. Greenlee not to do so without first seeing the defendant Jacobs further about the matter. On the next day when they were returning to move the third family, they met Jacobs on the road, admitted having moved the two families the night before, and stated to him the purpose of their return to the plantation with the truck that morning.

It was further shown that Jacobs had just learned shortly before meeting Greenlee and the plaintiff on the road that morning that the two families had been moved the night before. He thereupon induced Dock Greenlee to accompany him to the Town of Schlater to see the general manager Roy Anderson, and was advised by Anderson to consult R. H. Hester, Justice of the Peace, as to whether he could have the Greenlee truck attached. Upon being advised by this official that he would not be entitled to

hold the truck, he then inquired whether he could make an affidavit charging Greenlee and the plaintiff with moving labor at night, and whereupon the justice of the peace advised him that under the facts stated he could charge them with trespassing, since they had been warned to stay off the plantation and the land had been posted, the officer not fully comprehending the legal right of the tenants to move from the plantation, if they desired to do so, and of their right to invite Greenlee and the plaintiff Kisner to their homes for that purpose.

Accordingly, an affidavit was made by the defendant Jacobs against said Greenlee, and then presently one was likewise made against the plaintiff when he admitted participation in what had occurred on the night before, and also knowledge of the fact that Greenlee had been previously notified not to again come on the plantation under such circumstances. Thereupon warrants were issued, and it was necessary that a special constable be appointed to execute the same. At the suggestion of the officers, the affiant Jacobs accompanied the constable and the two accused to Greenwood, using his car for that purpose on account of the fact that the constable's car was in bad repair, and the accused were placed in jail at Greenwood where they remained for approximately three hours, and until about 4 o'clock that afternoon.

From the time Jacobs learned that the tenants had been moved from the plantation and the time of the arrests of the accused and their being placed in jail, it is not shown that anyone communicated with the defendant W. P. Brown in regard to what was transpiring. If he was communicated with either by Jacobs, Anderson, the justice of the peace, constable or anyone else, such fact was not shown by the proof, but, on the contrary, all of them testified that so far as they knew the defendant Brown knew nothing about the tenants having been moved or what was being done about it until after the accused were released from custody by the sheriff upon an order of the justice of the peace, stating that the case had been com-

promised and settled—an order obtained by J. E. Greenlee, with the consent of Jacobs, following their negotiations for a compromise, and whereupon Greenlee had given a check for the sum of $125, an amount suggested by him to be applied on the accounts of the tenants, and also a check in payment of the constable's cost (that of the J. P. being waived), stating at the time that the boys had violated his instructions and that he wanted to get the matter settled to prevent his father, who was then suffering from heart trouble, learning of the prosecution. This compromise was attempted to be made, we presume, under the provisions of Sec. 1317, Code of 1930, authorizing the same to be done in misdemeanor cases on motion of the prosecuting attorney, although no such officer was then present.

Following this compromise of the alleged trespass case and the release and discharge of the accused, the said Jacobs went to the Town of Drew that night, delivered the $125 check to W. P. Brown, explained what had occurred, and stated to him that the matter had been settled accordingly. Thereupon Brown accepted the check as a payment on the accounts of the tenants and credited the same as per the compromise agreement. On the following Monday, the Greenlees and plaintiff Kisner consulted an attorney, upon whose advice payment of the check was stopped, and Brown was notified by letter to that effect. Upon learning of J. E. Greenlee's then attitude, Brown made no further attempt to enforce collection of the check after payment was refused thereon, except to insist in a telephone conversation with the attorney that the same should be paid. The attorney testified, however, upon the trial of the case at bar that Brown stated to him in this telephone conversation that he knew all about what had occurred (as this was subsequent to the report made to him by Jacobs on the Saturday night before), and further testified that Brown then stated that he told the plantation managers to do what they did, and that he intended to back them up in the matter. Brown and his

secretary, who had heard what Brown said over the phone, denied that this latter statement was made, and as heretofore stated, all of the persons who were in position to know the facts testified that so far as they knew Brown knew nothing about the making of the affidavits nor the arrest and imprisonment of the accused until after they had been released from custody without bail following the compromise of the prosecution for the alleged trespass. Moreover, it was not shown that Jacobs was out of the presence of the accused Dock Greenlee from the time he learned of the alleged trespass until the time of making the affidavit and causing his arrest, nor that he had an opportunity to communicate with Brown from the time he learned of such alleged trespass and the making of the affidavit against the plaintiff Kisner and arrest and imprisonment. It was Roy Anderson, not the defendant Brown, who advised Jacobs to see the justice of the peace and ascertain if the truck could be held by attachment; it was Jacobs' idea, and not Brown's, that the supposed offense of "moving labor at night" had been committed; it was the justice of the peace and not Brown who suggested to him that he make the affidavit charging the alleged trespass; and there is no substantive proof in this record that Brown knew either before or at the time of the making of the affidavits and the arrests and imprisonment that the alleged trespass had been committed. And, the version of the attorney of what was said by Brown in the telephone conversation a few days later cannot suffice to overturn the positive testimony of all the witnesses who were conversant with the actual facts when they testified that so far as they knew Brown did not know of the alleged trespass or the events which followed until after the alleged compromise of prosecution and release of the plaintiff from custody, and this is especially true in the absence of proof that any of the persons interested had the opportunity or means of communicating with him in the meantime, and without one or the other of the accused knowing of such fact.

The acceptance by Brown of the $125 check to be applied on the accounts of the tenants under the circumstances hereinbefore stated, and at a time when he had good reason to believe that such an adjustment of the controversy was satisfactory to all parties concerned, did not constitute an actionable wrong, and the peremptory instruction requested in his behalf should have been granted.

In 38 C. J. 476, Sec. 147, supra, it is said: "In accordance with elementary rules, applicable to causes of action for malicious prosecution, elsewhere considered, the burden of proof is on plaintiff to show that the proceedings complained of were instituted, instigated, or continued by defendant, or that he aided and abetted the proceedings. If the proceedings were instituted by an agent or employee of defendant, the burden is on plaintiff to show that the latter was acting under the authority and directions of defendant or within the scope of his duties as agent or employee."

In the case of Fisher v. Westmoreland, supra, the person instituting the alleged malicious prosecution had the custody, control, management and the power to sell a saw mill. He instituted a prosecution against the plaintiff in the case for the theft of a part of the machinery of the plant. The prosecution failed. Thereafter, the person prosecuted brought an action against the owner of the saw mill for damages for malicious prosecution. The court held that the owner of the saw mill was not liable, and cited with approval the case of Daniel v. Atlantic Coast Line Railroad Company, 136 N. C. 517, 48 S. E. 816, 67 L. R. A. 455, 1 Ann. Cas. 718, wherein the Supreme Court of North Carolina held "The appointment of one as cashier at a railway station, with power to collect money, give receipts, sell tickets, take care of the money received and forward it to the treasurer of the company, does not empower him to arrest persons whom he suspects of having stolen money which has come into his possession so as to render the railroad company liable in case he causes the arrest of an innocent person."

In the case of Russell v. Palentine Insurance Co., supra, one Klein was the district agent of the insurance company authorized to check up and settle with local agents of the company and collect from such agents premiums going to the company. He found Russell, the plaintiff in that case, short on premiums due the company. Russell failed to pay on demand. Klein instituted a prosecution against him for embezzlement of the premiums. The prosecution failed and Russell sued the insurance company for malicious prosecution based on the action of Klein. The court held that the insurance company was not liable, citing among other authorities the decision in Dally v. Young, 3 Ill. App. 39, wherein it was said "Where an agent institutes a malicious prosecution of his own head, and without the instigation or direction of his principal, the latter will not be liable for the same, unless he adopts and continues the same with knowledge of all the circumstances." Our court then stated "Should we hold that appellee was responsible for the acts of Klein, it would be to hold, when an authority to collect a debt is shown, the law will imply the authority to institute criminal proceedings against the debtor in case the debtor fails or refuses to pay. We do not believe that this is sound in reason or in law." [106 Miss. 290, 63 So. 646, 51 L. R. A. (N. S.) 471.]

In the case of Young v. L. B. Price Mercantile Company, supra, wherein the appellant Young, a peddler, who traveled over the country selling goods for the appellee, was caused to be arrested and placed in jail by one of the district managers of the appellee mercantile company on a charge of embezzling the goods of the company when he refused to turn the same over to him when requested, the court reviewed at some length the law of the case, applying the foregoing authorities and held that the appellee was not liable for the action of its said agent.

Moreover, it should be noted that in the case at bar Jacobs was not shown to have had authority as a planta-

tion rider even to undertake collection of the debts in question; and most assuredly, he was not vested with authority as such an employee to determine under what circumstances tenants would be allowed to move from the plantation at the end of the crop year, or to institute prosecutions against persons aiding them to do so.

To continue the statement of facts as to what occurred subsequent to payment being stopped on the check and after Brown's connection therewith had ceased, as affecting the case presented against the other defendant Jacobs, it was shown that a few days later the attorneys for the plaintiff Kisner went to see the justice of the peace, found that no charge had been entered on the docket against him, caused the same to be done and the affiant Jacobs to be summoned to appear at court on January 8, 1941, to testify as a witness for the state on the charge of trespass, thereby rendering it necessary that the justice of the peace notify the county attorney to be present as prosecutor, and then obtained a judgment of acquittal at the hands of the said justice of the peace who was then fully conversant with the facts as to how the case had already been compromised and settled, and at which trial the attorneys charged the accused a fee for conducting the defense, which expense the jury in the case at bar was permitted under an erroneous instruction to consider as a part of the damages awarded to the plaintiff herein. Brown was again a stranger to the proceedings and was not notified that the trial was to be held nor did he know anything about it until after it had been concluded. Jacobs appeared and testified against the accused only for the reason that he had been notified by the officer on the afternoon before to be present at the hour set for the trial and thought that he had to be here. In other words, the plaintiff in the present suit procured through his attorneys his own further prosecution in order to obtain an acquittal as a basis for the institution of this suit for damages against the defendants Jacobs and Brown.

However, we are of the opinion that in view of what had transpired prior to this trial on January 8, 1941, the defendant Jacobs was not entitled to the peremptory instruction requested on his behalf.

A person's belief that certain existing facts constitute a crime, when they in reality do not, does not justify the institution of a criminal charge against another, and such a belief, however honestly entertained, will not shield from liability the person bringing the criminal prosecution. Probable cause cannot be predicated on a mistaken belief as to the law, unless such belief is entertained in reliance on the advice of a person presumed to be learned in the law; Am. Law Inst. Rest. Torts, Vol. 3, p. 409, wherein it is stated under subsection (b) that: "While a mistaken belief in regard to the facts may furnish probable cause for initiating criminal proceedings, a mistaken belief as to the legal consequences of a person's conduct does not furnish probable cause unless based upon the advice of counsel . . .;" 34 Am. Jur., pages 736 and 747, Secs. 52 and 71; Parli v. Reed, 1883, 30 Kan. 534, 2 P. 635; Hazzard v. Flury, 1890, 120 N. Y. 223, 227, 24 N. E. 194; Cabiness v. Martin, 1832, 14 N. C. 454, 3 Dev. Law 454; Smith v. Deaver, 1857, 49 N. C. 513, 4 Jones Law 513; and Hall v. Hawkins, 1844, 5 Humph., Tenn., 357. However, "the immunity which the law extends to a party when acting in good faith on the advice of an attorney at law in instituting proceedings against another is generally denied a party who, in like circumstances, has followed the advice given by a magistrate, justice of the peace, or clerk of the court, and it may be stated as a general rule that in an action for malicious prosecution, the defendant cannot justify his action in instituting the prosecution by pleading that he relied in good faith upon the advice of a magistrate, clerk of the court, or layman." 34 Am. Jur. 749, Sec. 73.

While it is true that under the cases of Berry v. Priddy, 126 Miss. 125, 88 So. 517, and King v. Weaver Pants Corp., 157 Miss. 77, 127 So. 718, it is necessary for plaintiff in

order to recover damages in a suit for malicious prosecution to allege and prove both malice and want of probable cause, it was held in the case of State Life Ins. Co. of Indiana et al. v. Hardy, 189 Miss. 266, 195 So. 708, that the term ''malice'' in the law of malicious prosecution means that the prosecution was instituted primarily because of a purpose other than that of bringing an offender to justice, such as for instance the resort to criminal prosecution for the purpose of collecting a debt, wherein the unworthy motive alone supplies the necessary element of legal malice, though no actual malice be otherwise shown. 3 Rest. Torts 380, Sec. 653; Odum v. Tally, 160 Miss. 797, 134 So. 163; Grenada Coca Cola Company v. Davis, 168 Miss. 826, 151 So. 743; and O'Bryant v. Coleman, 169 Miss. 776, 152 So. 59, 154 So. 259. Under the facts disclosed in the case at bar, it was an issue for the jury as to whether the defendant Jacobs instituted the criminal proceeding for a purpose other than that of bringing the alleged offender to justice. But, in addition to the element of malice, if found to exist, the prosecution must have also been without probable cause as hereinbefore stated. In Am. Law Inst. Rest. Torts, Vol. 3, Sec. 662, it is said that ''One who initiates criminal proceedings against another has probable cause for so doing if he (a) reasonably believes that the person accused has acted or failed to act in a particular manner, and (b) (1) correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or (2) mistakenly so believes in reliance on the advice of counsel under the conditions stated in Sec. 666.'' In the instant case, the defendant Jacobs did not correctly believe that the acts complained of constituted either at common law or under any existing statute the offense charged against the accused, nor did he mistakenly so believe on the reliance of advice of counsel. He acted at his peril in having the plaintiff Kisner arrested and placed in jail for going to the home of the negro tenants at their instance and assisting in removing their household

goods from the plantation. Sec. 1168, Code of 1930, making it a criminal offense for any person to go upon the inclosed land of another without his consent, or upon land not inclosed where the stock law is in force, after having been notified by such person or his agent not to do so, has no application in the present case for two reasons: First, it was not shown whether the land was inclosed or, if not inclosed, whether it was in a stock law district; and second, the tenants held such possession of the particular premises occupied by them during that year as to entitle them to grant permission to the accused to lawfully come to their homes for the purpose complained of. Conceding that the accused had no moral right to go onto the plantation in the nighttime in violation of the previous agreement with the defendant Jacobs, there is quite a distinction between a wrong and a crime even though the wrong be a tortious one.

However, it was said in the case of Jones v. Donald Co. et al., 137 Miss. 602, 102 So. 540, that ''One of the requirements for the maintenance of an action for malicious prosecution is the termination of the original proceeding in the plaintiff's favor not brought about by settlement or compromise and agreement of the parties thereto. 18 R. C. L. 21; 1 Cooley on Torts (3 Ed.) 340; Waters v. Winn, 142 Ga. 138, 82 S. E. 537, L. R. A. 1915A, 601, Ann. Cas. 1915D, 1248, and notes thereto.'' Therefore, the remaining question as to the liability of the defendant Jacobs is whether the plaintiff Kisner voluntarily entered into the compromise and settlement of the prosecution on December 28, 1940, through his alleged agent J. E. Greenlee who effected the compromise at a time when the plaintiff Kisner was not present but was in jail. We are of the opinion that under all of the facts and circumstances, it was a question for the jury as to whether the accused authorized or subsequently ratified the compromise and settlement as made.

But, it was error to permit the jury by an instruction on behalf of the plaintiff to consider, in determining the

amount of damages to be awarded, loss of time in attending the trial on January 8, 1941, and the expenses incurred for an attorney's fee for defending the prosecution of the criminal case which was then being further conducted at his own instance and procurement. Moreover, the verdict of the jury consisted largely in an award of punitive damages based on testimony as to the financial worth of the defendant Brown, and while this testimony would have been competent against both defendants if they had been shown to be joint tort-feasors, it should not be considered by the jury in determining the amount of punitive damages to be awarded against the defendant Jacobs alone. Upon a new trial of the case, the fact should be recognized that while an honest belief on the part of the defendant Jacobs that a crime had been committed at the time he made the affidavit at the suggestion of the justice of the peace following his disclosure of the facts in the case did not constitute a complete defense to the suit for malicious prosecution, such belief may be taken into consideration in mitigation of punitive damages, if any should be awarded; Kable v. Carey, 135 Ark. 137, 204 S. W. 748, 12 A. L. R. 1227; 34 Am. Jur. 765, Sec. 102; and especially in view of the fact that the county prosecuting attorney appears to have subsequently prosecuted the accused on the charge as made, and presumably after being fully advised of what had occurred.

Reversed and judgment here for the appellant Brown; reversed and remanded as to the appellant Jacobs on the question of damages only.