HUDSON *v.* PEVSNER.

Jan. 5, 1953

No. 38597 14 Adv. S. 11 61 So. 2d 777

*Strange & Strange* and *Edwin A. Dunn,* and *Homer W. Pittman,* for appellant.

*Hannah, Simrall & Aultman,* for appellee.

ROBERDS, P. J.

Mrs. Beatrice Hudson, the appellant, sued Abe Pevs-
ner, the appellee, and Mrs. W. O. Whigman for damages

for false arrest and imprisonment. The jury returned a verdict against Mrs. Whigman and she did not appeal. The trial judge granted a peremptory instruction in favor of Pevsner and Mrs. Hudson appeals from that action.

Mrs. Hudson's arrest was caused by Mrs. Whigman. The deciding question is whether Pevsner was liable for the action of Mrs. Whigman. The learned trial judge held he was not.

In January, 1951, Pevsner was the owner and operator of three jewelry stores—one each in Hattiesburg, Laurel and Meridian. He resided in Hattiesburg. The manager of the Meridian store, called the Diamond Shop, had severed his connection therewith. Mrs. Whigman was temporarily in charge of that shop. Mrs. Hudson owed the shop, but the amount of the indebtedness is not shown. On January 23, 1951, Mrs. Hudson presented to some one in the Shop a check for $35, signed by Roy Horton, payable to cash. Her account was credited with $10 and she was given $25 in cash. On January 27, 1951, Mrs. Hudson got the Shop to cash another check. This one was for $60, was signed by W. T. Horton, the father of Roy Horton, and was payable to Mrs. Hudson, or bearer. Mrs. Hudson endorsed it. Her account was credited with $13 and she was given $47 in cash. Mrs. Hudson was unable to name the employee who had cashed the checks. Mrs. Whigman did not personally know Mrs. Hudson or the Hortons. Both checks were drawn on the Bank of Louisville, Mississippi. Both were dishonored and returned to the Shop. Mrs. Whigman called the Bank over the telephone and was informed the drawers had no account, or funds, at the Bank with which to pay the checks, and also indicated that other bad checks had been drawn on this Bank by these parties. Mrs. Whigman went to see Mrs. Hudson, but no adjustment was made. Mrs. Whigman then went to the sheriff, who directed her to a justice of

the peace. She explained the situation to the justice of the peace, who advised her to make affidavit against Mrs. Hudson for obtaining money under false pretenses. Mrs. Whigman signed the affidavit prepared by the justice of the peace. There is grave doubt whether the affidavit charged any crime but we will assume that it did. Mrs. Whigman carried to the sheriff the warrant for the arrest of Mrs. Hudson which the justice of the peace issued. The sheriff went to see Mrs. Hudson, who discussed the situation with him and who made some effort, without success, to adjust the matter. He then arrested and placed her in jail. The prosecution was later dismissed by the county attorney. Mrs. Whigman said she felt responsible to her employer for the money paid out on these bad checks.

Mrs. Whigman, before she took this action, undertook to contact Mr. Pevsner by telephone to know what to do, but was unable to talk with him, he being out of the state. He knew nothing of it until sometime thereafter. He never ratified what she did.

As to her authority, Mrs. Whigman was temporarily in charge of the Shop for about a month. She had the keys with authority to open and close it. She was generally in charge of the sales of merchandise and collections therefor. It is not shown she had power to sell on credit. We will assume she had the authority to receive money in payment of debts owing the Shop by its customers. There is an entire absence of testimony showing she had authority, express or implied, to cash checks and pay out the employer's money thereon. And, a fortiori, she possessed no authority to have persons arrested and jailed when their checks, so cashed, were turned down by the drawee bank. And even though she had possessed the authority to cash such checks, criminal prosecution of the person receiving the money was not an appropriate means to collect the debt. In Russell v. Palatine Ins. Co., 106 Miss. 290, 63 So. 644, this Court

said, "Should we hold that appellee was responsible for the acts of Klein, it would be to hold, when an authority to collect a debt is shown, the law will imply the authority to institute criminal proceedings against the debtor in case the debtor fails or refuses to pay. We do not believe that this is sound in reason or in law." Fisher v. Westmoreland, 101 Miss. 180, 57 So. 563; Russell v. Palatine Ins. Co., supra; Young v. Price Mercantile Co., 167 Miss. 409, 148 So. 643; State Life Ins. Co. v. Hardy, 189 Miss. 266, 195 So. 708; Brown v. Kisner, 192 Miss. 746, 6 So. 2d 611.

Affirmed.

*Hall, Kyle, Arrington* and *Ethridge, JJ.,* concur.