STATE for the Use of LITTLE *v.* UNITED STATES FIDELITY & GUAR. CO.

May 11, 1953

No. 38561 31 Adv. S. 75 64 So. 2d 697

*Brunini, Everett, Grantham & Quinn,* for appellant.

*George Chaney,* for appellee.

McGEHEE, C. J.

This is a suit for damages on the official bond of a justice of the peace. The bond was made an exhibit to the amended declaration and is in the penal sum of $2,000.00 to insure that the said official "shall well and

faithfully perform the duties of his office''. The charge is that the officer did not comply with this obligation of the bond, but was guilty of misfeasance in office to the damage of the plaintiff.

The case was submitted to a jury under instructions which defined the issue to be primarily as to whether or not the plaintiff, P. E. Little, was caused to be arrested for the purpose of bringing an offender to justice or for the sole purpose of aiding the collection of a debt by criminal process. There is no conflict in the evidence on the issue of whether or not the prosecution was instituted and the plaintiff caused to be arrested solely for the purpose of coercing him into paying a check signed by him in the name of his employer, which had been issued to another employee as a ''payroll check'' for past services rendered to the employer, and which was returned for ''insufficient funds''.

The plaintiff was refused a peremptory instruction on liability and the jury returned a verdict in favor of the sole defendant United States Fidelity & Guaranty Company, the justice of the peace having died prior to the institution of the suit. From that verdict and the judgment rendered thereon the plaintiff prosecutes this appeal.

The facts disclose without conflict that on November 5, 1949, the plaintiff, P. E. Little, was the office manager and timekeeper of Martin Harris, who was engaged in the business of drilling oil and gas wells; that on said date the plaintiff issued a payroll check to J. J. Ainsworth, a member of a drilling crew of Martin Harris which was working at Mayersville in Issaquena County. The check shows on its face that it was issued at Jackson, Mississippi, on the date aforesaid and signed ''Martin Harris—Payroll, by P. E. Little'', and that his act in issuing such check was committed at Jackson, in Hinds County, Mississippi, whereas the prosecution was instituted in Warren County. The check is set forth in full as follows:

"PAYROLL CHECK
MARTIN HARRIS DRILLING CO.
JACKSON, MISS. No. 873
Jackson, Miss., Nov 5 1949 19......

Pay to the
Order of.....................J. J. Ainsworth...................$94.24
...............EXACTLY $94 & 24 cts...............DOLLARS
To Deposit Guaranty Bank
 & Trust Co. Martin Harris—Payroll
 Jackson, Miss. By P. E. Little''

Martin Harris, sole owner of the Martin Harris Drilling Company, had sufficient funds in the Deposit Guaranty Bank & Trust Company, Jackson, Mississippi, to the knowledge of the plaintiff and in the name of "Martin Harris—Payroll", with which to meet the entire payroll at the time this check was given, but the proof discloses that Martin Harris was at that time temporarily in Houston, Texas, and drew against the said account, with the result that his checks and the payroll checks given by the plaintiff left an insufficient balance to take care of all of the latter, which were then aggregating approximately $1,800.00 per week.

The payee J. J. Ainsworth got the check cashed at the place of business of Mrs. Minnie Meyer at Vicksburg in Warren County. She deposited the same and when it reached the Deposit Guaranty Bank & Trust Company at Jackson the same was not paid and as aforesaid the notation was made thereon "insufficient funds". Thereupon Mrs. Meyer went to the office of Clint Brown, the justice of the peace, at Vicksburg, in Warren County, and presented the check to him to enlist his aid in the collection thereof.

The proof further shows without conflict that the justice of the peace, who was then ill, but who with the assistance of his wife was undertaking to attend to the duties of his office, had no information, so far as the record shows, that the plaintiff, P. E. Little, had either issued or delivered the check in Warren County, but he, nevertheless, prepared an affidavit in the form pre-

scribed by Section 2154, Code of 1942, for Mrs. Meyer to sign, which was accordingly done, charging that the accused had issued and delivered his check for value, in the sum of $94.24, to J. J. Ainsworth in District No. 1, of Warren County, when the justice of the peace knew, or by looking at the check that he had before him when preparing the affidavit on which the warrant for the arrest was issued, would have known that the check was issued and signed by the plaintiff at Jackson, in Hinds County, and would have further known that since the same was plainly designated a "payroll check" nothing of value had been obtained by means thereof as required by Section 2153, Code of 1942, as amended by Chapter 403, Laws of 1948, to constitute the crime of obtaining money or other thing of value under false pretenses—a crime involving moral turpitude—with which the plaintiff was then being charged when the wife of the justice of the peace was preparing the affidavit against the plaintiff herein in the presence and under the direct supervision of the said official.

The affidavit, (if prepared by Mrs. Brown, as she testified, in the form provided for by the statute, Section 2154, Code of 1942) stated in substance that Mrs. Meyer charged under oath that on the 5th day of November, 1949, P. E. Little had unlawfully issued and delivered, in District No. 1 of Warren County, unto J. J. Ainsworth for value, his certain check in the words and figures hereinbefore quoted in full, when he, the signer of the check, had insufficient funds on deposit with the bank with which to pay the same, against the peace and dignity of the State of Mississippi.

The affidavit was shown by an entry on the docket of the justice of the peace to have been made on November 19th, 1949, and it was lost immediately after the arrest of the plaintiff, but we must assume as true, since the testimony of Mrs. Brown was undisputed in that behalf, that it contained the averments set forth in the next preceding paragraph hereof and that therefore

the affidavit showed on its face that the accused was not required by law to have any funds on deposit with which to pay the check, but that this was the responsibility of his employer under whose authority the same had been issued; and that it affirmatively appeared from the affidavit that the check was issued at Jackson in Hinds County where the accused performed his duties as office manager and timekeeper for the Martin Harris Drilling Company, and that therefore the justice of the peace had no jurisdiction or authority to require the accused to appear before him for a supposed offense committed outside his territorial jurisdiction.

On the same day, November 19, 1949, the justice of the peace, Clint Brown, issued and mailed to the sheriff of Hinds County, a warrant for the arrest of the plaintiff, P. E. Little, directing that he be brought before the justice of the peace in District No. 1 of Warren County, to answer to the State of Mississippi on a charge of "bad check"; and that also on this same day the justice of the peace sent a telegram to Albert Jones, Sheriff of Hinds County at Jackson, Miss., in the following words: "Arrest P E Little care Martin Harris Drilling Company office in Deposit Guaranty Bank and Trust Co Bldg for bad check $94.24 plus $8.00 cost for Warren County plus the cost of Hinds County—Clint Brown Justice of Peace Telephone number 3778—".

Thus it clearly appears that Mrs. Meyer, who did not testify in this case, and the justice of the peace and his wife all knew from the face of the check, or otherwise, where the accused could be found, where he maintained his office in Jackson, and where he attended to the duties of his employment in the issuance of payroll checks; and they furnished the sheriff of Hinds County with this information in the foregoing telegram sent to him upon the commencement of the prosecution.

On November 26, 1949, a deputy in the office of the sheriff of Hinds County telephoned the plaintiff at the office of Martin Harris Drilling Company in the Deposit

Guaranty Bank & Trust Company in Jackson, Miss., to come to the sheriff's office. The plaintiff went to the sheriff's office pursuant to his request, was taken into custody and deprived of his liberty until he could get in touch with an acquaintance, who maintained an office on the same floor of the Deposit Guaranty Bank & Trust building where the office of the Martin Harris Drilling Company was located, and obtained a sufficient sum of money with which to pay the amount of the check plus $10.50 in costs in order to procure his release from custody.

There was endorsed on the back of the warrant sent to the sheriff of Hinds County the following:

| "WARRANT FOR ARREST | Check | $ 94.24 |
| Mrs. Minnie Meyer | J. P. | 5.00 |
| vs | Long Distance & | |
| P. E. LITTLE | Western Union | 3.00 |
| | | |
| Harris Drilling Co. | Total | $102.24 |
| Dep. Bank Bldg. | | 2.50 |
| | | |
| | | $104.74" |

The deputy sheriff at Jackson testified at the trial of the instant case that he showed the warrant and telegram to the plaintiff, and that the latter stated that he did not understand it, that is, did not know what check he was arrested for giving, and that thereupon the deputy called the office of the justice of the peace at Vicksburg, when Mrs. Brown answered the telephone. He was then asked to state the substance of his conversation with Mrs. Brown, and his answer was: "I told Mrs. Brown that I had Mr. Little in my office at the time, and asked her if she wanted a bond on him, or wanted him to pay this check off, and Mrs. Brown promptly told me that she would like to have the check paid, otherwise she would send the sheriff after him."

Mrs. Brown, the wife of the justice of the peace, testified that her husband was telling her what to say over

the telephone in the conversation above mentioned. She was asked as a witness at the trial of the instant case, "Did Judge Brown tell the sheriff over there if this man didn't pay off he would send the sheriff after him? A. Yes, he did." She stated that "Mr. Brown was able to attend to his business up to the time he died." He died on February 14, 1950, prior to the filing of this suit against his official bond as heretofore stated.

It was freely admitted by the witness Mrs. Brown that the prosecution was instituted for the purpose of aiding Mrs. Meyer to collect the check. She also admitted that she was assisting her husband, the justice of the peace, in the handling of this matter, and that all that they were interested in was having the check paid off. That she was speaking for her husband and that he was telling her what to say when she was talking to the deputy at Jackson, when the latter was asking about a bond; that what they wanted was for Mr. Little to pay off the check, the cost of the justice of the peace, and the cost of the Hinds County officers, and that unless he should do so they wanted him held until the sheriff of Warren County could come for him. In other words, there is no dispute in the testimony in regard to the fact that all Mrs. Meyer wanted was to make Mr. Little pay the check, and that the justice of the peace and his wife were aiding and assisting her to coerce him into paying this check of his employer, without any thought of bringing an alleged offender to justice for a violation of the criminal laws.

Mrs. Brown was so familiar with the check that was presented to the justice of the peace, when she assisted him in making out the affidavit, that she was able to recognize and identify it at the trial of the present suit more than six months after the institution of the criminal proceeding.

As heretofore stated, the check disclosed on its face that it was given in Jackson as a payroll check for past services and that no offense had been committed by the signer thereof, either in Warren County or elsewhere.

A mere casual examination of the check, which the officer had before him, clearly disclosed that he had no territorial jurisdiction of the alleged offense. Moreover, when the officer and his wife were preparing the affidavit, with the check before them, they necessarily knew that since the check was denominated a payroll check, the same was given for past services, and involved no violation of Section 2153, Code of 1942, known as the "bad check law". Mrs. Meyer had told them that all she wanted was her money, and they were willing to use the criminal processes of the court purely in an effort to assist her in collecting the same. Such an abuse of the criminal process of a court is simply to make the liberty of the citizen the security for the debt.

As hereinbefore stated the telegram sent by the justice of the peace to the sheriff of Hinds County clearly discloses that he knew where the signer of the check in question had performed the duties of his employment when issuing the same on behalf of Martin Harris Drilling Company; and that he knew this when he issued the warrant for his arrest on the same day that he sent the telegram, and also when he instructed the deputy sheriff of Hinds County to hold the plaintiff in custody until he could send the sheriff of Warren County to Jackson for him unless he paid the amount of the check and all the costs. The justice of the peace also knew that the check in question was not in any sense of the term the check of the plaintiff in the instant case.

Even though the deputy sheriff of Hinds County when acting pursuant to a warrant which was regular on its face would incur no liability in arresting the plaintiff and retaining him in custody under the circumstances hereinbefore set forth, and would not be guilty of any abuse of process in executing the warrant in the proper manner, as he did on the occasion in question, the justice of the peace was clearly guilty of an abuse of the criminal process of his court when he in effect rejected the suggestion of the deputy sheriff of Hinds County in regard

to allowing the accused to make a bond, to which he was entitled as a matter of right in any event, and demanded that unless he paid the check and all the court costs (and he would not have been liable for any court costs except in case of a trial and conviction) the deputy should hold the accused in custody until the justice of the peace could have the sheriff of Warren County come to Jackson for him.

He was thereby lending the functions and the process of his court in aid of the ulterior purpose of coercing the accused into paying a debt that he did not owe. It so happened that the deputy sheriff who had the plaintiff in custody took the responsibility of telling the plaintiff that he would allow him to make a bail bond in the sum of $250.00 for his appearance before the justice of the peace, without regard to the request of the justice of the peace that the plaintiff be held in custody until he could send the sheriff of Warren County for him unless he paid the amount of the check and the costs.

It appears that after the check in question was presented by Mrs. Meyer to the justice of the peace on the occasion when the affidavit was prepared for her signature, the same was returned to the affiant, was redeposited by her in the bank, and was thereafter paid in due course on November 29, 1949, three days after the arrest of the plaintiff. Of course, the Martin Harris Drilling Company was reimbursed on the double payment of the check.

It is urged by the appellee that the deputy sheriff of Hinds County gave the plaintiff the "free" choice of either (1) making the settlement, (2) going to jail, or (3) posting bail and facing a trial in the justice of the peace court. But the proof shows without dispute that he paid the check and costs under coercion and not as a free and voluntary act. It appears that the plaintiff's personal friends on whom he would have felt free to call for assistance had gone to Ole Miss to a football game that day, and that luckily he was able to contact an

acquaintance by telephone in the office building where he was employed and get him to agree to bring some money to the sheriff's office to pay off the demand. He had requested permission of the deputy to be allowed to go to the office building or elsewhere in the city to get the money needed for that purpose but was granted permission to do so only on condition that he be accompanied to and fro in the custody of a deputy sheriff. ▪▪ ▪ It is not a free choice when one pays a demand that he does not owe in order to avoid the embarrassment of being accompanied along the street and to business offices by a deputy sheriff in the exercise of his freedom as he moves around among his friends and acquaintances.

The precise question presented for decision is whether or not the plaintiff was entitled to a peremptory instruction on liability for such damages as he may have sustained by reason of being deprived of his liberty and freedom while being detained in the office of the sheriff of Hinds County; for the injury to his name and reputation on account of the fact that his arrest became known to numerous occupants of the building where he was then employed, and among the employees of the bank on which the check had been drawn; and for damages on account of the humiliation and embarrassment occasioned him in connection with the matter. We are of the opinion that he was entitled to such an instruction, unless the surety on the bond of the justice of the peace is relieved of such liability under the doctrine of judicial immunity of the principal signer thereof.

The only decision of our Court relied upon by the appellee as rendering it immune from liability as the surety of the justice of the peace is the case of Jones v. Donald Co., et al., 137 Miss. 602, 102 So. 540, wherein the court held that "one of the requirements for the maintenance of an action for malicious prosecution is the termination of the original proceeding in the plaintiff's favor not brought about by settlement or compromise and agreement of the parties thereto." However,

in the instant case there was no settlement or compromise and agreement of the parties thereto. The plaintiff had no contact whatever with the affiant in the criminal prosecution, who at that time had redeposited the check in question and which was being cleared through the regular banking channel at the time the plaintiff submitted to the demands of the justice of the peace in order to avoid going to jail. Moreover, in Jones v. Donald, supra, the Court referred to the rule that a suit for malicious prosecution is not barred unless the settlement of the criminal prosecution was voluntarily entered into by the plaintiff, and said: ''Conceding the soundness of the rule here invoked, there is no merit in this contention, for the reason that the appellant himself initiated the negotiations which resulted in the settlement after he had been admitted to bail and was under no sort of duress other than the liability to answer the criminal charge which had been made against him, which duress, if such it can be said to be, is necessarily present in every settlement or compromise of this character.''

In the instant case the negotiations were initiated in the telegram of the justice of the peace, and again in a telephone conversation between him and the arresting officer, and this occurred while the plaintiff was under duress of imminent and impending imprisonment, because of the difficulty that he was having in locating someone to assist him in securing his freedom from the arrest. The prosecution was discontinued by the justice of the peace when it had served the original purpose intended, and was not stopped at the request of the plaintiff.

Again, this cause is not essentially a suit for malicious prosecution. It is not so characterized in the pleadings of the plaintiff, but is clearly predicated upon the failure of the justice of the peace to ''well and faithfully perform the duties of his office'' in that he was guilty of misfeasance in office to the detriment and damage of the plaintiff.

Section 1464, Code of 1942, reads as follows:

"The declaration shall contain a statement of the facts constituting the cause of action, in ordinary and concise language, without repetition; and if it contains sufficient matter of substance for the court to proceed upon the merits of the cause, it shall be sufficient; and it shall not be an objection to maintaining any action that the form thereof should have been different."

In 51 C. J. S., Justice of the Peace, Sec. 19 (b) p. 36, it is said: "The general rule is that ▮▮▮▮ a justice who acts in a case of which he has no jurisdiction, or who exceeds his jurisdiction, is liable in damages to any party injured." There is a conflict in the authorities as to whether a justice of the peace is liable for acts performed in excess of his jurisdiction, but it is well settled that he is liable for acts committed to the damage of a plaintiff where he has no jurisdiction at all in the particular case.

It is true that in this state a justice of the peace has general jurisdiction of the subject matter of misdemeanors alleged to have been committed in his district, and if he obtains jurisdiction of the person by having him arrested, he has the judicial power and authority to try him for the offense alleged to have been committed in his territorial jurisdiction, but this does not mean that he may prepare an affidavit so framed by him as to charge that an offense has been committed in his territorial jurisdiction contrary to the information furnished on the face of the simple document presented to him by the affiant and which the officer copies in the affidavit, and merely for the purpose of lending the criminal process of his court to having someone arrested for an act committed outside of his territorial jurisdiction, and merely to aid in the collection of a civil debt. He must have territorial jurisdiction where the offense has been committed, and he has no jurisdiction at all over a prosecution for an offense which he knows was committed, if at all, outside of his judicial district.

It is true that in passing on the sufficiency of an affidavit presented to him with a request for the arrest of the alleged offender, a justice of the peace is acting judicially and if he makes a mistake, as to the sufficiency of the affidavit, he is of course not liable therefor. But this does not mean that he has the right to frame an affidavit for signature by an affiant in such a manner as to show territorial jurisdiction of the prosecution, when he has been furnished by the affiant the true facts showing that the offense, if committed at all, occurred outside of his territorial jurisdiction, as in the instant case.

In 31 Am. Jur., Justice of the Peace, Sec. 25, p. 721, it is said that liability has been held to attach where a justice issues a warrant on a complaint that clearly shows the offense was committed outside his jurisdiction, citing Piper v. Pearson (Mass.) 61 Am. Dec. 438, and Miller v. Grice, 44 Am. Dec. 271. Here the officer knew from the face of the check which he copied in the affidavit that the offense was committed, if at all, outside of his jurisdiction.

In Duffin v. Summerville (Ala.) 63 So. 816, the Court after announcing the rule as to judicial immunity where a justice of the peace has jurisdiction, went further and said: "It must not be supposed, however, that the law counts as a judicial act, and grants immunity from suits by individuals for damages resulting therefrom, every act, seemingly such, which a justice of the peace may perform. For it to be a judicial act, entitling him to the exemption mentioned, it must not only be a judgment, or decision, or conclusion of some kind of a legal or judicial nature, but it must be done or performed in a matter wherein the justice has jurisdiction to act; otherwise, it is not a judicial act within the contemplation of law, however much it may have involved the exercise of judgment and discretion, but is merely the act of the individual, not the judge, assuming an authority he does

not possess. For his wrongful acts of this nature, a justice of the peace is liable, . . ."

In Brown, et al. v. Kisner, 192 Miss. 746, 6 So. 2d 611, the opinion of the court stated: ". . . it was held in the case of State Life Ins. Co. of Indiana, et al. v. Hardy, 189 Miss. 266, 195 So. 708, that the term 'malice' in the law of malicious prosecution means that the prosecution was instituted primarily because of a purpose other than that of bringing an offender to justice, such as for instance the resort to criminal prosecution for the purpose of collecting a debt, wherein the unworthy motive alone supplies the necessary element of legal malice, though no actual malice be otherwise shown. 3 Rest. Torts, 380, Sec. 653; Odum v. Tally, 160 Miss. 797, 134 So. 163; Grenada Coca Cola Company v. Davis, 168 Miss. 826, 151 So. 743; and O'Bryant v. Coleman, 169 Miss. 776, 152 So. 59, 154 So. 259."

In Wilcox v. Williamson, 61 Miss. 310, it is stated: "As to court of inferior and limited jurisdiction the general rule laid down is that the judge is not liable when he acts within, but is liable when he acts without, his jurisdiction. This rule makes the liability depend upon the jurisdiction, using the latter word not as applicable to a case of mistaken exercise of a doubtful jurisdiction, but when under the pleadings and admitted or clearly proven facts there could be no possible jurisdiction."

In State For Use of McLaurin v. McDaniel, 78 Miss. 1, 27 So. 994, this Court quoted with approval from Grove v. Van Duyn, 42 Am. Rep. at page 650, the following: "It would be no legal answer for the magistrate to assert that he had a general cognizance over criminal offenses, for the conclusive reply would be that the particular case was not, by any form of proceeding, put under his authority." And the Court then said, "What the magistrate does *colore officii,* his sureties are liable for. . . . The acts of this magistrate here in question were done *colore officii,* and not at all as an individual. He was

not acting, nor purporting to act, in any mere individual capacity, as any private citizen would be."

The appellee invokes the provision of Section 1832, Code of 1942, which declares "on affidavit of the commission of any crime *of which he has jurisdiction* lodged with the justice of the peace, he shall issue a warrant for the arrest of the offender . . ., and shall try and dispose of the case according to law; . . ." (Italics supplied). But how could it be contended that this justice of the peace had the right to take any action in regard to an alleged offense known, from the written information furnished him by the affiant, to have been committed, if at all, in another county?

In stating the general rule that the liability of a judicial officer for damages is dependent on the existence or non-existence of his jurisdiction, it is said in 30 Am. Jur., Judges, Sec. 45, pp. 758-9, that "jurisdiction is defined as the authority to act officially in the matter then in hand."

In the case of Hoppe v. Klapperich (Minn.) 173 A. L. R. 819, it is stated: "Obviously, the use of a process for the accomplishment of a purpose for which it was not designed in order to compel a person to do some collateral thing which he could not in this manner be compelled to do is an abuse of process."

According to the annotation under the case of Melton v. Rickman, 225 N. C. 700, 162 A. L. R. 800, it appears that all jurisdictions except that of Georgia recognize that one who uses legal process to compel a person to do some collateral act not within the scope of the process or for the purpose of oppression or annoyance is liable in damages in a common law action for abuse of process. And in the case of Melton v. Rickman, supra, abuse of process is defined as the misuse of legal process for an ulterior purpose. And the annotation thereto states that "in one jurisdiction (Georgia) a cause of action for abuse of criminal process (as distinguished from abuse of civil process), cannot be maintained, and so a person resorting

thereto in an effort to collect a debt is not liable for damages. Dugas v. Darden, 65 Ga. App. 394, 15 S. E. 2d 901.'' But, as stated, the rule is different elsewhere.

 The distinction recognized between a malicious prosecution, false imprisonment, and abuse of process is that a malicious prosecution is a prosecution with malice and without probable cause, that false imprisonment is the arrest and imprisonment without legal process, and that an abuse of process is the misuse of legal process for an ulterior purpose. The annotations in 4 A. L. R. 233, and 162 A. L. R. 800, deal with the use of criminal process to collect a debt and show that an action for abuse of process may be maintained on account thereof. Whereas, the annotation in 173 A. L. R. 836, deals with the civil liability of a judicial officer for malicious prosecution or abuse of process when the prosecution is for the purpose of collecting a civil debt. There was both a malicious prosecution in the legal sense and an abuse of process on the part of the justice of the peace in the instant case in that he demanded the payment of his cost and the debt of another in advance of a trial as a condition precedent to the release of the prisoner on a bailable charge.

In the case of Curley v. Automobile Finance Co., 343 Pa. 280, 23 A. 2d 48, reported in 139 A. L. R. 1082, it was held in substance that when a plaintiff shows that a prosecution was instituted for the mere purpose of collecting a civil debt, it then devolves upon the defendant to introduce proof to show that the prosecution was instituted for probable cause. No such proof was offered by the defendant in the instant case and it seems to be well settled by the case of Curley v. Automobile Finance Co., supra, and the elaborate annotation thereunder in 139 A. L. R. 1088, that a prima facie case of want of probable cause is established by evidence that the prosecution was instituted to collect a debt.

We emphasize that the prosecution was discontinued in the instant case upon receipt by the justice of the peace

of the check of the sheriff of Hinds County for the amount of the so-called "bad check" plus the costs claimed by the justice of the peace. No negotiations for a discontinuance of the prosecution were initiated by the plaintiff in the instant case, as defendant in that case, nor did he pay the demand as a free and voluntary compromise of the wholly unwarranted criminal prosecution. But, be that as it may, a cause of action accrued to the plaintiff by reason of the damages that he sustained because of an abuse of criminal process by the justice of the peace, for whom the appellee had become surety to guarantee that the said official would well and faithfully perform the duties of his office. And since there was no conflict in the evidence, we think that the plaintiff was entitled to a directed verdict in his favor and that the judgment should therefore be reversed and the cause remanded for the assessment of damages only, and in such amount as the plaintiff may be able to show that he has sustained, but not in excess of the penalty of the bond sued on.

Reversed and judgment here for appellant on liability, and remanded only for the assessment of damages.

*Roberds, Lee, Kyle* and *Ethridge, JJ.,* concur.