## Rhodes *v.* Roberts.

No. 39517          March 21, 1955          78 So. 2d 614

*Merle F. Palmer,* Pascagoula, for appellant.

*Chas. S. Mitchell,* Pascagoula, for appellee.

Holmes, J.

The appellee instituted this suit against the appellant as an attachment in chancery by filing his original bill in the Chancery Court of Jackson County, seeking the recovery of damages for malicious prosecution. The bill alleged the non-residence of the appellant, and the ownership of lands by him in the State of Mississippi, and further alleged that the appellant, with full knowledge of the innocence of the appellee, wilfully, wantonly, un-

lawfully, and maliciously preferred charges against the appellee by affidavits filed in the justice of the peace court, charging him with the crime of wilfully and unlawfully removing trees and timber from the lands of the appellant, and prosecuted him thereon, well knowing at the time that the charges preferred against the appellee were false and were being preferred against him solely for the unlawful and malicious purpose of extorting a sum of money from the appellee which the appellant well knew the appellee did not owe him.

The answer of the appellant did not deny the allegations of the bill otherwise than by the general traverse, and, therefore, they stood admitted. Section 1291, Mississippi Code of 1942; Morris v. Columbia, 184 Miss. 342, 186 So. 292. Nevertheless, the chancellor heard evidence, and at the conclusion thereof, found therefrom that the prosecution was maliciously instituted and pursued, and he accordingly entered a decree in favor of the appellee and against the appellant for damages in the sum of $500.00, making no provision therein for the subjection of the lands of the appellant to the payment of the decree. The appellant appeals from this decree.

We are of the opinion that none of the numerous grounds assigned by the appellant for the reversal of the lower court's decree are well taken and we deem it necessary to notice only a few of them.

The appellant complains that the decree of the court below is against the overwhelming weight of the evidence. In dealing with this contention, it should suffice to say that the allegations of the original bill were sufficient to support the appellee's action, and that they stood admitted in view of the appellant's failure to deny the same otherwise than by the general traverse. Section 1291, Mississippi Code of 1942; Morris v. Columbia, supra. However, we relate the material facts as disclosed by the evidence.

The appellant was a non-resident of the State of Mississippi, residing in Mobile, Alabama. He owned land

in Jackson County, Mississippi. The appellee's son-in-law owned adjoining land. The appellant's brother, R. E. L. Rhodes, discovered some trees had been cut on what he understood to be appellant's land. A lady living on adjoining property told him that Mr. Roberts cut the trees. She did not say whether it was Mr. Henry L. Roberts, Sr., the appellee, or Mr. Henry L. Roberts, Jr., the son of appellee. R. E. L. Rhodes communicated this information to the appellant and the appellant came to Mississippi and the two of them went on the land to inspect the premises. While they were on the land, Henry L. Roberts, Jr. appeared on the scene and told them, according to the testimony of R. E. L. Rhodes, that the land on which the trees had been cut was reserved for a right-of-way and was not owned by appellant and his brother, and he had not cut any timber on their land. The evidence disclosed a dispute between Henry L. Roberts, Jr. and the appellant and his brother as to the location of the line of appellant's property, which was timber land. The appellant undertook to testify that Henry L. Roberts, Jr. told him on that occasion that he and his daddy had cut the timber, but was not permitted to do so on objection by the appellee. He later testified, however, at page 60 of the record, and the testimony was not excluded, that the son had told him that his father had cut the timber. Without further investigation to ascertain who cut the timber, or whether it was cut through honest mistake or otherwise, the appellant went before the justice of the peace on July 30, 1952, and made affidavit that the appellee had wilfully and unlawfully cut the timber, and procured the issuance of a warrant for the arrest of the appellee. This affidavit and warrant were duly entered on the docket of the justice of the peace. The appellee, hearing that a warrant for his arrest had been issued, went to the sheriff's office and there made bond for his appearance to answer the charge. He appeared three times before the justice of the peace, and each time was told that the prosecution

was not ready, and the case was continued. In the meanwhile, the appellee and the appellant discussed the matter several times. According to testimony introduced on behalf of the appellee, he told the appellant he had not cut the timber and if his son cut it, he would try to arrange an adjustment of the matter. In the meantime, the son had gone to Iowa where he was to obtain a job for about six months.

According to the testimony of the appellant, the appellee never claimed in his presence that he did not cut the timber. Finally, it was agreed between the appellant and the appellee that the appellee would pay the appellant $200.00 in settlement of the matter. The appellee claimed that he would have to have time in which to get the money. He did not pay the money, and on September 8, 1952, the appellant, accompanied by his attorney, went before the justice of the peace and made a second affidavit charging the appellee with the unlawful and wilful cutting of the timber, and the appellee was put to trial. This affidavit does not appear to have been entered on the docket of the justice of the peace, although the appellee testified that he was twice arrested. It is not clear from the evidence whether the appellee was tried on the first or second affidavit. It is clear from the evidence, however, that the appellant was continuing the prosecution either on the first or second affidavit. On the appellee's trial it was shown that the appellee's son had cut the timber and appellee had nothing to do with it and the appellee was acquitted.

The appellant testified that he instigated the prosecution to force the appellee to settle up; that he made the second affidavit because the appellee did not go ahead with the settlement as he agreed; that he made the second affidavit to force appellee to go through with the settlement, "to force him and make somebody pay damages on the property," and that was his only reason for pursuing the charge against him; that due to the fact

the appellee had not lived up to his agreement, he decided to punish him.

The chancellor found from the evidence that the prosecution was instituted and continued maliciously and without probable cause. We think the evidence, independently of the admissions arising from the failure of the appellant to deny the allegations of the bill otherwise than by the general traverse, amply supports the chancellor in his findings of facts and his conclusions of law. The appellant's own testimony without dispute shows that he instituted and continued the prosecution of the appellee not for the purpose of bringing him as an offender to justice, but for the purpose of extorting from him payment for the timber. Thus it is shown that the prosecution was for the purpose of using the criminal processes of the law to collect for the timber, and this state of facts supplies the element of malice or wantonness. Grenada Coca-Cola Company, et al v. Davis, 168 Miss. 826, 151 So. 743.

''The term malice in the law of malicious prosecution means that the prosecution was instituted primarily because of a purpose other than that of bringing an offender to justice.'' Brown, et al v. Kisner, 192 Miss. 746, 6 So. 2d 611; State Life Insurance Company of Indianapolis, Indiana v. Hardy, 189 Miss. 266, 195 So. 708.

We are in full accord with the principle announced in the case of Berry v. Priddy, 126 Miss. 125, 88 So. 517, that to constitute malicious prosecution there must be a concurrence of malice and lack of probable cause. We think that both of these elements are present in the case before us, and we are accordingly of the opinion that the contention that the decree of the chancellor is against the great weight of the evidence is untenable.

The appellant further contends that the court erred in excluding the testimony to the effect that the appellee's son told him that he and his daddy cut the timber. We think this testimony was admissible to rebut

proof of malice and lack of probable cause. 54 C. J. S. 1071. We are of the opinion, however, that its exclusion was harmless error in view of the fact that the appellant, at another time, testified, and such testimony was not excluded, that the son told him that his daddy had cut the timber.

The appellant also contends that the amount of damages awarded is excessive. In commenting upon elements of damages recoverable in a case of malicious prosecution, this Court, in the case of State Life Insurance Company of Indianapolis, Indiana v. Hardy, supra, said: "Without proof of special damages, a plaintiff, in a malicious prosecution case, may recover damages for (a) the harm to his reputation which normally results from such an accusation as that brought against him, and (b) the distress which normally results from the initiation of such proceedings."

The proof shows without dispute that the appellee was earning about $18.00 per day; that he lost three days attending court to answer the charge brought against him; that he was a man of good reputation and was never before charged with any offense; that friends and others chided him with being a timber thief; that he was subjected to embarrassment and humiliation as a result of the accusation brought against him and was rendered sick, nervous, and upset, and caused to spend sleepless nights. It is difficult to estimate the harm to his reputation which normally results from such an accusation, and to measure in dollars and cents his distress which normally followed. Certainly we do not feel warranted in saying that the chancellor was manifestly wrong in his determination from the evidence of the amount of damages to be awarded. Furthermore, as was aptly said in the case of Grenada Coca-Cola Company v. Davis, supra, "When contrary to constitutional safeguards, creditors resort to criminal processes and to arrests under criminal charges for the collection of their debts, we shall not be overdiligent in interference with

the amounts of the damages fixed by juries for malicious prosecution."

Viewing the record as a whole, we are of the opinion that it is free from reversible error and the decree of the court below is therefore affirmed.

Affirmed.

*McGehee, C. J.*, and *Hall, Lee* and *Kyle, JJ.*, concur.