CARLOS FOWLER, JR., PLAINTIFF-APPELLANT *v.*
E. L. KING, et al., DEFENDANTS-APPELLEES

No. 43670 November 15, 1965 179 So. 2d 800

*Roy O. Parker,* Tupelo, for appellant.

*Mitchell, McNutt & Bush,* Tupelo, for appellees.

PATTERSON, J.

This appeal arises from the Circuit Court of Lee County as the result of a jury verdict in favor of the defendants, Mrs. Lucille Brannon and E. L. King, and a directed verdict for North Mississippi Community Hospital Corporation in an action for malicious prosecution.

On or about January 15, 1964, Mrs. Lucille Brannon, an employee of the North Mississippi Community Hospital Corporation, signed a criminal affidavit against Carlos Fowler, Jr., on a check dated November 11, 1962, in the sum of $20.00 upon which payment had been declined. This check was payable to the North Mississippi Community Hospital for services rendered to plaintiff's child. The affidavit made was for false pretense under the "bad check" law and Fowler was imprisoned as a result thereof in the County Jail of Lee County from February 12, 1964, until February 17, 1964. Subsequent to the imprisonment Mrs. Brannon withdrew the criminal affidavit against the defendant and he has never been tried on such charges.

Fowler had previously, the 19th day of June, 1962, been convicted and sentenced by the Circuit Court of Lee County to serve a term of three years in the state penitentiary for the offense of grand larceny. The execution of this sentence, however, had been suspended and Fowler was placed on probation for a term of two years and this suspension was on September 12, 1963, extended an additional two years. On February 17, 1964, this suspended sentence was revoked after hearing by

the circuit court. Fowler then filed a petition for a writ of habeas corpus which was denied by the trial court. This order of denial was affirmed by this Court.

Fowler was granted bail pending the appeal of the habeas corpus proceeding and during the interval brought this action for malicious prosecution. He sued Mrs. Lucille Brannon, the manager of patient accounts for the North Mississippi Community Hospital Corporation, E. L. King, the administrator of North Mississippi Community Hospital Corporation, and the North Mississippi Community Hospital Corporation.

At the conclusion of the testimony the court refused Fowler's motion for a directed verdict as to liability as to all of the defendants. The court then sustained a motion for the hospital and released it from the suit. The issues as to the remanding defendants, Mrs. Brannon and King, were submitted to the jury which found in their favor.

The appellant assigns as error, among other assignments, the following: (1) The court erred in directing a verdict in favor of North Mississippi Community Hospital; (2) The court erred in failing to direct a verdict for the plaintiff after the conclusion of the evidence; (3) The court erred in excluding the evidence in regard to the revocation of probation as to plaintiff's damages; (4) The court erred in commenting on the plaintiff's testimony while the plaintiff was testifying before the jury; and (5) The court erred in suppressing the interrogatories as to the financial condition of the three defendants in this cause.

 ██ ██ We hold that the court erred in directing a verdict in favor of the defendant hospital at the conclusion of the testimony as King was the general administrator of the hospital with the general authority and responsibility to carry out its policies in accord with the desires of the board of directors and as such could have been determined from the evidence to be

their alter ego. In sustaining the motion of the hospital for a directed verdict the court relied expressly upon the case of *Russell v. Palentine Ins. Co.*, 106 Miss. 290, 63 So. 644 (1913) and the case of *Hudson v. Pevsner*, 216 Miss. 126, 61 So. 2d 777 (1953). In Palentine *supra* at page 301 we held:

> Mr. Klein was employed by the insurance company to collect its claim against appellant, and he was authorized to employ all appropriate means to accomplish this end; and, while the agent is employing appropriate means to carry out his master's business, the master is responsible for his acts. Certainly it cannot be said that a criminal prosecution is a means appropriate to the collection of debts. In Daily v. Young, 3 Ill. App. 39, it is said: ''Where an agent institutes a malicious prosecution of his own head, and without the instigation or directions of his principal, the latter will not be liable for the same, unless he adopts and continues the same with knowledge of all the circumstances.''

> Should we hold that appellee was responsible for the acts of Klein, it would be to hold, when an authority to collect a debt is shown, the law will imply the authority to institute criminal proceedings against the debtor in case the debtor fails or refuses to pay. We do not believe that this is sound in reason or in law.

The last paragraph of Palentine was cited with approval in Hudson *supra*. We note in each of these cases that the authority of the agent involved was limited and was not general as was King's authority in the instant case. We have examined the cases of *Fisher v. Westmoreland*, 101 Miss. 180, 57 So. 563 (1911); *Young v. L. B. Price Mercantile Co.*, 167 Miss. 409, 148 So. 643 (1933); *State Life Ins. Co. of Indianapolis, Ind. v. Hardy*, 189 Miss. 266, 195 So. 708 (1940); and *Brown v. Kisner*, 192 Miss. 746, 6 So. 2d 611 (1942), each discussing the

authority of an agent to instigate criminal proceedings, and in each this Court held that the agency was limited and that no authority by implication resulted to the agent whereby the principal could be held liable in suits of this character. In fact, in Young *supra,* the strongest of these cases, this Court held in effect that the district manager of a chain of stores whose district consisted of Mississippi and "probably parts of Louisiana and Arkansas" and who had individual managers for each store who were subservient to him, was not the alter ego of the company and declined to hold the defendant liable for such district manager's action for malicious prosecution alleged to have been instituted by such manager, stating:

> The evidence in this case neither showed nor tended to show that Morris was appellee's alter ego, vested with full and complete discretionary power in regard to the conduct of appellee's business, and all of its incidents. In such a case a different rule might apply. We do not decide that question. (167 Miss. at 416.)

Opposed to this line of reasoning is the case of *Gandy v. Palmer,* 251 Miss. 398, 169 So. 2d 819, 824 (1964), wherein this Court held the manager and vice-president of McCaffrey's, Inc. to be the alter ego of the corporation and in so doing cited with approval the following language from 34 Am. Jur. *Malicious Prosecution* § 89 (1941):

> "The principles of law governing the liability of an employer or principal for a malicious prosecution instituted or carried on by a servant or agent are simple, and any difficulty which may arise grows out of their application to the facts of a particular case. If the prosecution was previously authorized or subsequently ratified, or if within the scope of the servant's or agent's employment, the employer or principal is liable * * *."

In view of the dilemma of authorities on the question, we are of the opinion that the above-cited quotation properly asserts the law of this state as to such agency, that is, that the particular facts in each case must be analyzed to determine whether an agent is in fact the alter ego of the principal. See also 34 Am. Jur. *Malicious Prosecution* § 89 in its entirety (1941) and *Grenada Coca-Cola Co. v. Davis,* 168 Miss. 826, 151 So. 743 (1934).

Neither King nor the hospital had any knowledge of the actual signing of the criminal affidavit by Mrs. Brannon on February 12, 1964, and the instigation of criminal proceedings thereon until after the arrest of Fowler, nor did either ratify or affirm this act. Here King was the general administrator of the hospital with full and complete authority to carry out its policies. He reported to the board of directors once each month as to his activities in this regard. He had the authority to hire and fire employees with the possible exception of key personnel. His authority included the management of 350 employees of the hospital and the supervision and collection of accounts. This authority carried with it the right to use the courts in the collection of accounts, as the administrator testified that the hospital had used the assistance of justices of the peace in collections in the past. In considering these facts in the light of the cited authorities, though we are not unmindful of the evidence by the president of the hospital to the effect that the authority to instigate criminal proceedings was never delegated to the administrator, and the testimony of the administrator that such authority was never received by him, nevertheless we are of the opinion that this question, being one of fact, should have been submitted to the jury for its determination.

The second assignment of error, that the court erred in refusing to direct a verdict for the plaintiff as to liability against all of the defendants after the conclusion of the evidence, is not well taken as to the hospital

as it did not expressly grant authority to King to instigate criminal prosecutions and neither did it ratify either the acts of King or Mrs. Brannon. Its liability, if any, is hinged on the role and authority of King, its agent, in the chain of events leading to this suit and this is a question for the jury's determination.

 █ This assignment of error is not well taken as to King, the administrator of the hospital, for the reasons that he did not in fact sign the criminal affidavit, and, according to his testimony, had no knowledge thereof until five days afterward when he was subpoenaed to appear at a revocation of suspended sentence proceeding in regard to Fowler; nor is there ratification on his part of the acts of Mrs. Brannon. The evidence is in conflict as to whether he authorized Mrs. Brannon to merely collect the account or whether he expressly authorized her to sign the criminal affidavit. The question thus resolves itself to an issue of fact for the jury to determine. From the facts as reflected by the record, the jury could find that King expressly authorized the criminal affidavits in this case; or it could find that he authorized Mrs. Brannon to collect accounts in such broad terms as would carry with it by implication the authority to institute criminal proceedings for the collection; or it could find that he did neither. This determination is within the province of the jury and was properly submitted to them by the court for determination.

 █ We are of the opinion, however, that the liability of Mrs. Brannon is established in law and that the court erred in not sustaining the plaintiff's motion for a directed verdict against this defendant. The record reflects that she is a competent person and that she signed the affidavit, along with three others which were not acted upon, for the collection of a debt. In *Harvill v. Tabor*, 240 Miss. 750, 128 So. 2d 863 (1961) we stated:

Tabor did testify that he had no malice toward appellant, but malice in fact and malice in law are not to be confused. The ordinary and popular meaning of malice is usually associated with anger, hatred, ill will, and the like. Such malice in fact may exist with malice in law, but malice in law may exist independently of malice in fact. And when, as here, there is no actual malice in fact, the element of malice is supplied by wantonly instituting the criminal proceedings to collect a debt in reckless disregard of the rights of appellant.

When the prosecution is for the purpose of using the criminal processes of the law to collect a debt, this fact supplies the element of malice. Rhodes v. Roberts, 223 Miss. 580, 78 So. 2d 614; Grenada Coca-Cola Company v. Davis, 168 Miss. 826, 151 So. 743. Such an abuse of the criminal process of a court is simply to make the liberty of the citizen the security for the debt. State, for use of Little v. United States Fidelity & Guarantee Company, 217 Miss. 576, 64 So. 2d 697. (240 Miss. at 754.)

This case was cited with approval in *Pullman v. Ott,* 246 Miss. 739, 150 So. 2d 143 (1963) ; *Kitchens v. Barlow,* 250 Miss. 121, 164 So. 2d 745 (1964) ; and *Gandy v. Palmer, supra.* The defendant's statement that she acted in haste and did not sign the criminal affidavit with the intent of having the plaintiff arrested, but only for the collection of the debt, does not detract from the stated law, but in fact emphasizes the reckless disregard for the rights of the plaintiff. See *Grenada Coca-Cola Co. v. Davis,* 168 Miss. 826, 151 So. 743 (1934) and *Odum v. Tally,* 160 Miss. 797, 134 So. 163 (1931).

 █ The next assignment of error, that the court erred in excluding the evidence in regard to the revocation of probation as to damages in the cause, is not well taken for the reason that the order of revocation indicates that the probation was not suspended because of

the affidavit signed by Mrs. Brannon. Rather, it was
for the following causes as found by the circuit court:
"Being before the court on numerous occasions for false
pretense, failing to report; being intoxicated, and num-
erous traffic violations."

 █ The next assignment of error, that the court
erred in commenting on the plaintiff's testimony, is
well taken as the remarks of the trial judge went di-
rectly to the credibility of the witness. While the plain-
tiff was testifying as to the probation hearings, the
following colloquy transpired:

"Q. And the Judge had already passed on that,
everything had already been presented to him besides
these last four checks is that right?

"A. Yes, sir.

"THE COURT:

"I am going to have to object to that remark that
I held this hearing, that is not true, that is just not
correct.

"BY MR. PARKER:

"Court Please, I am going to object to Your Honor
testifying in this case, you being the presiding officer.

"THE COURT:

"I would like that to be in the record.

"BY MR. PARKER:

"If Your Honor is going to take the stand I am going
to object.

"THE COURT:

"Well that is not correct. I will add this, there has
been one or two checks and one or two hearings in which
this young man was involved, but some of these has not
been presented to me until the last hearing."

Shortly thereafter the court recessed and upon recon-
vening the judge withdrew these statements and ad-
monished the jury to disregard them. We conclude,
after due deliberation, that the impression produced
in the minds of the jury by the above remarks which

went directly to the plaintiff's credibility was such that it could not reasonably be expected to be removed by an admonition or corrective statement on the part of the court, and that the plaintiff was deprived of a fair trial thereby, and that this was reversible error. See *Dickinson v. Koenig,* 242 Miss. 17, 133 So. 2d 721 (1961); Green v. State, 97 Miss. 834, 53 So. 415 (1910); and Pearson v. State, 179 So. 2d 792 this date decided.

 █ The final assignment of error, that the court erred in suppressing the interrogatories with reference to the financial condition of the defendants, is well taken. In *Pullman Palace Car Co. v. Lawrence,* 74 Miss. 782, 22 So. 53 (1897), this Court refused to suppress interrogatories propounded with the view of showing the financial condition of the defendant, the reason being that punitive damages were sought. The plaintiff seeks punitive damages in the case at bar. Therefore, the interrogatories should not have been suppressed as their admissibility into evidence would depend upon whether or not the issue of punitive damages was sufficiently established to be submitted to the jury.

We have considered the other assignments of error submitted by the appellant and find no merit therein.

Reversed and remanded.

*Lee, C. J., and Rodgers, Inzer and Smith, JJ.,* concur.